# IN THE COMMONWEALTH COURT OF PENNSYLVANIA

Jeremy Taylor,                              :
                                            :
                    Petitioner              :
                                            :
          v.                                :   No. 532 M.D. 2014
                                            :
The Pennsylvania State Police of the        :   Argued:  September 16, 2015
Commonwealth of Pennsylvania,               :
                                            :
                    Respondent              :


BEFORE:    HONORABLE DAN PELLEGRINI, President Judge[1]
           HONORABLE BERNARD L. McGINLEY, Judge
           HONORABLE BONNIE BRIGANCE LEADBETTER, Judge
           HONORABLE RENÉE COHN JUBELIRER, Judge
           HONORABLE MARY HANNAH LEAVITT, Judge[2]
           HONORABLE P. KEVIN BROBSON, Judge
           HONORABLE ANNE E. COVEY, Judge


**OPINION  BY**
**JUDGE COHN JUBELIRER**[3]            **FILED:  January 12, 2016**


Before this Court in our original jurisdiction are the Preliminary Objections

(POs) in the nature of a demurrer of the Pennsylvania State Police (PSP) to Jeremy

---

[1] This case was assigned to the opinion writer before December 31, 2015, when President Judge Pellegrini assumed the status of senior judge.

[2] This case was assigned to the opinion writer before January 4, 2016, when Judge Leavitt became President Judge.

[3] This matter was reassigned to the authoring judge on December 8, 2015.

Taylor's (Petitioner) "Amended Petition for Review in the Nature of a Writ of Mandamus seeking to Compel the [PSP] to Change Petitioner's Sexual Offender Registration Status in Accordance with the Law Addressed to the Court's Original Jurisdiction" (Petition for Review). Petitioner pled guilty to three counts of Involuntary Deviate Sexual Intercourse (IDSI)[4] in 1994, and has been required by law to register as a sexual offender since his release from incarceration in 2004. (Petition for Review ¶¶ 3, 7.) Petitioner alleges that the current registration and notification requirements imposed upon him by the Sexual Offender Registration and Notification Act (SORNA)[5] are unconstitutional as the requirements are a form of ex post facto punishment and infringe on his protected right to reputation without due process of law. The PSP objects to the Petition for Review by alleging that Petitioner has failed to state a claim. The PSP first alleges that mandamus will not lie against the PSP because the statute of limitations has run for these types of actions and the PSP lacks the duty or authority to change Petitioner's registration requirements. The PSP also objects to the merits of the Petition for Review by alleging that Petitioner has not stated a constitutional claim under either the Ex

_____

[4] Section 3123(a)(4) of the Crimes Code, 18 Pa. C.S. § 3123(a)(4). The offense is defined as:

> the person engages in deviate sexual intercourse with a complainant: . . . (4) where the person has substantially impaired the complainant's power to appraise or control his or her conduct by administering or employing, without the knowledge of the complainant, drugs, intoxicants or other means for the purpose of preventing resistance.

Id.

[5] Sections 9799.10-9799.41 of the Sentencing Code, 42 Pa. C.S. §§ 9799.10-9799.41. Courts have also referred to SORNA as the Adam Walsh Act.

Post Facto Clauses of the United States or Pennsylvania Constitutions or the Due Process Clause of the Pennsylvania Constitution.[6] For the reasons that follow, we sustain the POs in part and overrule the POs in part.

## I. SORNA's Requirements

This case involves the registration and notification requirements of SORNA, which is the General Assembly's fourth iteration of the law commonly referred to as Megan's Law.[7] The General Assembly's intent in enacting SORNA was to, *inter alia,* "substantially comply with [federal law] and to further protect the safety and general welfare of the citizens of this Commonwealth by providing for increased regulation of sexual offenders, specifically as that regulation relates to registration of sexual offenders and community notification about sexual

---

[6] The PSP's first PO alleges that Petitioner has failed to state a claim because SORNA applies to Petitioner and that Petitioner was properly classified as a Tier III offender. Petitioner does not allege that SORNA does not apply or that he is improperly classified. We shall, therefore, overrule this PO.

[7] Megan's Law I, the Act of October 24, 1995, P.L. 1079 (Spec. Sess. No. 1), was enacted on October 24, 1995, and became effective 180 days thereafter. Megan's Law II was enacted on May 10, 2000 in response to Megan's Law I being ruled unconstitutional by our Supreme Court in Commonwealth v. Williams, 733 A.2d 593 (Pa. 1999). Our Supreme Court held that some portions of Megan's Law II were unconstitutional in Commonwealth v. Gomer Williams, 832 A.2d 962 (Pa. 2003), and the General Assembly responded by enacting Megan's Law III on November 24, 2004. The United States Congress expanded the public notification requirements of state sexual offender registries in the Adam Walsh Child Protection and Safety Act of 2006, 42 U.S.C. §§ 16901-16945, and the Pennsylvania General Assembly responded by passing SORNA on December 20, 2011 with the stated purpose of "bring[ing] the Commonwealth into substantial compliance with the Adam Walsh Child Protection and Safety Act of 2006." 42 Pa. C.S. § 9799.10(1). SORNA went into effect a year later on December 20, 2012. Megan's Law III was also struck down by our Supreme Court for violating the single subject rule of Article III, Section 3 of the Pennsylvania Constitution. Commonwealth v. Neiman, 84 A.3d 603, 616 (Pa. 2013). However, by the time it was struck down, Megan's Law III had been replaced by SORNA.

3

offenders." Section 9799.11(b)(1) of SORNA, 42 Pa. C.S. § 9799.11. To this end, SORNA established, for the first time, a three tier classification system for sexual offenders. Section 9799.14 of SORNA, 42 Pa. C.S. § 9799.14. An offender's tier status is determined by the offense committed and impacts the length of time an offender is required to register and the severity of punishment should an offender fail to register or provide false registration information. Section 9799.15 of SORNA, 42 Pa. C.S. § 9799.15; Section 4915.1 of the Crimes Code, 18 Pa. C.S. § 4915.1.[8] Petitioner pled guilty to IDSI, which is a Tier III offense under SORNA carrying a life-time registration requirement. 42 Pa. C.S. § 9799.14(d)(4); 42 Pa. C.S. § 9799.15.

The PSP is charged with creating and maintaining a sexual offender registration system, and has enacted regulations to that end. Section 9799.16 of SORNA, 42 Pa. C.S. § 9799.16; 37 Pa. Code §§ 56.1 – 56.4. Pursuant to Section 9799.16(b) of SORNA, a registrant must provide the following information for inclusion in the registry: name, including any aliases or monikers used on the internet; telephone numbers; social security number; address of each residence located in the Commonwealth; passport or immigration documents; the name and address of any employers; any occupational licensing numbers; date of birth; driver license number; and information on any vehicles owned or operated. 42 Pa. C.S. § 9799.16(b). Additionally, the PSP must ensure the registry includes a physical description of the registrant, including any identifying marks; the offender's

---

[8] Section 4915.1(c)(1) of the Crimes Code provides that a Tier III offender, like Petitioner, who fails to register may be guilty of a second degree felony. 18 Pa. C.S. § 4915.1(c)(1).

criminal record; and a current photograph of the individual. 42 Pa. C.S. § 9799.16(c). This information is included in a statewide registry, which must "[b]e able to communicate with" the registries maintained by the United States Department of Justice and other jurisdictions. 42 Pa. C.S. § 9799.16(a)(2), (3).

In order to effectuate the General Assembly's intent to provide the public with increased notice and information about sexual offenders, SORNA mandates the release of certain information to the public. Relevant to this case, the General Assembly found that the release of information, most notably through the internet, enables "parents, minors and private entities" to "undertake appropriate remedial precautions to prevent or avoid placing potential victims at risk" from "recidivist acts by [sexual] offenders." Section 9799.11(a)(7), (8) of SORNA, 42 Pa. C.S. § 9799.11(a)(7), (8). To this end, Section 9799.28(a) of SORNA, 42 Pa. C.S. § 9799.28(a) (hereafter, "internet notification provision"), mandates that the PSP "[d]evelop and maintain a system for making information about [those] convicted of[, *inter alia*,] a sexually violent offense" public via the internet. SORNA also mandates that the website contain the offender's name and alias, birth year, address, facial photograph(s), and physical description. 42 Pa. C.S. § 9799.28(b)(1)-(7). If the offender operates a motor vehicle, the PSP must post the license plate number and a description of a vehicle owned or operated by the offender on the website. 42 Pa. C.S. § 9799.28(b)(8). Further, the internet website must contain a feature that allows members of the public "to receive electronic notification when the individual convicted of a sexually violent offense, sexually

5

violent predator[9] or sexually violent delinquent child moves into or out of a geographic area chosen by the user." 42 Pa. C.S. § 9799.28(a)(1)(ii).

With the foregoing in mind, we turn to Petitioner's allegations.

## II. Petitioner's Allegations

Petitioner pled guilty to his crimes on April 7, 1994, prior to the enactment of the first Megan's Law on October 24, 1995. (Petition for Review ¶ 3.) According to the Petition for Review, Petitioner began registering as a sexual offender upon his release from incarceration in 2004 under the requirements of Megan's Law II. (Petition for Review ¶¶ 5, 7.) Petitioner alleges that he "was informed and understood that upon his release" he would only be required to register for ten years.[10] (Petition for Review ¶ 6.) Petitioner was notified by the PSP on December 3, 2012, that, as a result of the enactment of SORNA, he was now classified as a Tier III offender and was required to register as a sexual

---

[9] SORNA defines sexually violent predators as individuals convicted of sexually violent offenses who are determined to have engaged in the violent conduct "due to a mental abnormality or personality disorder that makes the individual likely to engage in predatory sexually violent offenses." Section 9799.12 of SORNA, 42 Pa. C.S. § 9799.12. The process for the assessment and adjudication of sexual violent predators is found in Section 9799.24 of SORNA, 42 Pa. C.S. § 9799.24. Sexually violent predators are subjected to expanded notification requirements. See Sections 9799.26-9799.27 of SORNA, 42 Pa. C.S. §§ 9799.26-9799.27. Petitioner has not been classified as a sexually violent predator.

[10] Megan's Law II required persons convicted of IDSI, 18 Pa. C.S. § 3123, to register for life. Section 9795.1(b)(2) of Megan's Law II, 42 Pa. C.S. § 9795.1(b)(2) (expired December 20, 2012, pursuant to 42 Pa. C.S. § 9799.41). Offenders convicted of IDSI, 18 Pa. C.S. § 3123, were required to register for ten years under Megan's Law I. Section 9793(b)(2) of Megan's Law I, 42 Pa. C.S. § 9793(b)(2) (deleted May 10, 2000 by Section 3 of Megan's Law II).

offender for life, register four times each year, and have his registration information placed on the PSP's website for life. (Petition for Review ¶ 9.)

Petitioner filed his initial Petition for Review on October 10, 2014 and filed the amended version at issue here on January 28, 2015. Therein, Petitioner alleges that: (1) SORNA is an ex post facto law, as it retroactively increased the terms of his registration and imposes severe hardships upon him by restricting where he may live, his ability to find employment, and his ability travel with no available means to terminate his registration requirement; (2) SORNA "is not tailored to meet the desired government[al] interest" of protecting the population from recidivists; and (3) SORNA infringes upon his constitutionally protected interest to reputation without due process of law by utilizing an irrebuttable presumption that all sexual offenders pose a high risk of re-offense that is not universally true and that alternative means to assess sexual offenders' recidivism risks exist. (Petition for Review ¶¶ 10, 12-14, 16-22.)

### III. The PSP's POs

The PSP's first two objections to the Petition for Review, set forth in the same PO, are rooted in an understanding that Petitioner is asserting a cause of action in mandamus. The PSP's first objection alleges that mandamus will not lie against the PSP because Petitioner's claims are barred by the six-month statute of limitations applicable to these actions. The PSP cites to Curley v. Smeal, 41 A.3d 916, 919 (Pa. Cmwlth. 2012) (Curley I), aff'd but criticized sub nom., Curley v. Wetzel, 82 A.3d 418 (Pa. 2013) (Curley II), as standing for the proposition that actions against a government officer "'for anything he does in the execution of his

7

office' has" a six-month limitations period that begins to accrue "when the injury is inflicted and the right to institute a suit for damages arises." (POs ¶ 42 (quoting Curley I, 41 A.3d at 919).) According to the PSP, Petitioner's right to institute a suit arose on December 20, 2012, the date SORNA's requirements became effective, and the statute of limitations ran on June 20, 2013. (POs ¶¶ 45-46.) Because the instant suit was originally filed on October 10, 2014, well after June 20, 2013, Petitioner's claims are barred by the six-month statute of limitations. (POs ¶ 47.) The PSP's PO alleges, in the alternative, that even if Petitioner's claims are not barred by the statute of limitations, mandamus will not lie against the PSP because Petitioner does not have a clear legal right to the relief sought, and the PSP lacks the duty and authority to provide such relief. (POs ¶¶ 48, 50.)

The PSP also objects to Petitioner's constitutional challenges on their merits. The PSP's first allegation in this regard is that Petitioner has not stated a claim that SORNA is an ex post facto law because the retroactive application of SORNA was recently found to be non-punitive and constitutional by this Court in Coppolino v. Noonan, 102 A.3d 1254 (Pa. Cmwlth. 2014), aff'd, __ A.3d __ (Pa., No. 132 MAP 2014, filed November 20, 2015), and that previous versions of Megan's Law were similarly upheld as non-punitive by the Pennsylvania Supreme Court. See Commonwealth v. Gomer Williams, 832 A.2d 962 (Pa. 2003) (addressing Megan's Law II); Commonwealth v. Gaffney, 733 A.2d 616, 621 (Pa. 1999) (addressing Megan's Law I). (POs ¶¶ 55-57.)

The PSP demurs to Petitioner's due process challenges under three theories. First, the PSP alleges that the United States Supreme Court's decision in

Connecticut Department of Public Safety v. Doe, 538 U.S. 1 (2003) (Connecticut II), established that Petitioner does not have a procedural due process right to challenge his registration requirement. (POs ¶¶ 59-60.) Alternatively, PSP alleges that "'whether the additional sanctions imposed under Megan's Law II are punitive in nature is the threshold due process inquiry.'" (POs ¶ 65 n.5 (quoting Gomer Williams, 832 A.2d at 970 n.13).) Because this Court, in Coppolino, held that SORNA's requirements are not punitive, Petitioner's due process challenge also fails. (POs ¶ 65 n.5.)

Finally, the PSP alleges that SORNA's irrebuttable presumption that all sexual offenders required to register pose high risk of recidivism poses no constitutional concerns. (POs ¶ 74.) The PSP notes that the Pennsylvania Supreme Court, in In re J.B., 107 A.3d 1 (Pa. 2014), recently struck down portions of SORNA as applied to juvenile offenders, but alleges that the Supreme Court's holding in that case does not apply to adult sexual offenders. (POs ¶¶ 68-71.) The PSP alleges that, because Petitioner cannot prove that it is not universally true that adult sexual offenders pose a high risk of recidivating, Petitioner's due process claims under the Pennsylvania Constitution should be dismissed as legally insufficient.

We shall first address the PSP's objections based upon Petitioner seeking the requested relief in a mandamus action and then proceed to those challenging the legal sufficiency of Petitioner's constitutional claims. In doing so, we are aware that, when assessing the legal sufficiency of a petition for review, "the Court must accept as true all well-pleaded allegations of material fact as well as all reasonable

9

inferences deducible therefrom." Rodgers v. Pennsylvania Department of Corrections, 659 A.2d 63, 65 (Pa. Cmwlth. 1995). A petitioner is under *no burden* to prove his cause of action at this preliminary stage. Surgical Laser Technologies, Inc. v. Department of Revenue, 626 A.2d 664, 671 (Pa. Cmwlth. 1993). Moreover, a demurrer must only be sustained "where it appears, with certainty, that the law permits no recovery under the allegations pleaded." Rodgers, 659 A.2d at 65.

## IV. Discussion

### 1. Mandamus

Two of the PSP's objections are premised on its understanding that Petitioner is seeking relief in a mandamus action based on the title of his pleading. The PSP alleges that actions in mandamus have a six-month statute of limitations, which had expired long before Petitioner filed his Petition for Review in October 2014. The PSP also alleges, in the alternative, that Petitioner's claims lack merit because mandamus is only applicable to situations where the petitioner has a clear legal right to the performance of a mandatory ministerial duty, and the PSP has no such duty here to change Petitioner's registration requirements. However, notwithstanding the title of his pleading, Petitioner is not actually seeking relief in mandamus, but instead is seeking declaratory and injunctive relief from this Court.

Although the Petition for Review is self-labeled as a "Petition for Review in the Nature of a Writ of Mandamus . . .," a review of that document reveals no instances where Petitioner actually requests the PSP to undertake a mandatory duty. Petitioner requests this Court to:

10

> **declare** that SORNA's current lifetime registration is unconstitutional and **order that he is hereby exempt** from registering any further, and . . . from registering four (4) times a year under SORNA, or in the alternative, **grant Petitioner's request** that, as it applies to him, application of SORNA is a direct consequence to Petitioner and an ex post facto application of the law.

(Petition for Review, Wherefore Clause (emphasis added).) These requests, which assert constitutional claims against a Commonwealth agency, sound in declaratory and injunctive relief over which we have original jurisdiction pursuant to Section 761(a) of the Judicial Code.[11] See Van Doren v. Mazurkiewicz, 695 A.2d 967, 969 (Pa. Cmwlth. 1997) (sustaining preliminary objections to a petition for review requesting injunctive and declaratory relief and challenging the constitutionality of the registration provisions of Megan's Law I).

If Petitioner's filing contained the identical allegations and prayer for relief, but was not *specifically* titled a "Petition for Review in the Nature of a Writ of Mandamus . . .," but just *generically* titled "Petition for Review," this Court would consider the legal sufficiency of Petitioner's claims. There is no jurisprudential reason for this Court to elevate form over substance by relying on the title of the pleading, as opposed to the relief sought therein, as conclusively determining the form of action.[12] Rule 1502 of the Pennsylvania Rules of Appellate Procedure

---

[11] 42 Pa. C.S. § 761(a). Section 761(a) of the Judicial Code provides, in relevant part, that with few exceptions not applicable here, "Commonwealth Court shall have original jurisdiction of all civil actions or proceedings . . . [a]gainst the Commonwealth government, including any officer thereof, acting in his official capacity." Id.

[12] For example, upon receiving a pleading that is improvidently labeled a complaint in equity instead of a petition for review, this Court will generally enter an order shortly thereafter that directs the complaint to be regarded as a petition for review in our original jurisdiction. G.

*(Continued…)*

11

abolished, *inter alia*, the writ of mandamus and action for declaratory judgment insofar as they relate to determinations of government units and established the petition for review as the *exclusive pleading* for that purpose. Pa. R.A.P. 1502. The purpose of Rule 1502 was to assure that errors of form did not defeat claims against state government. Pa. R.A.P. 1502, Official Note. According to the Official Note to Rule 1502:

> [E]xperience teaches that governmental determinations are so varied in character, and generate so many novel situations, that on occasion it is only at the conclusion of the judicial review process, when a remedy is being fashioned, that one can determine whether the proceeding was in the nature of equity, mandamus, prohibition, or statutory appeal, etc. The petition for review will eliminate the wasteful and confusing practice of filing multiple "shotgun" pleadings in equity, mandamus, prohibition, statutory appeal, etc., and related motions for consolidation, and will **permit the parties and the court to proceed directly to the merits unencumbered by procedural abstractions**.

Id. (emphasis added).

---

Darlington, K. McKeon, D. Schuckers & K. Brown, Pennsylvania Appellate Practice § 1503:1 (West 2012). Similarly, on occasion, a petitioner will improvidently commence an action by directing a petition for review to our original jurisdiction when it should have been directed to our appellate jurisdiction. Id. In such cases, this Court treats the petition for review as if it was addressed to our appellate jurisdiction without dismissing the action. Id. However, "[a]mendment of the pleadings may become necessary where the theory of the cause of action is not *apparent* to the court." Id. at § 1503:2 (emphasis added). This is because while the Court may, when appropriate, "disregard the title of the pleading" it cannot grant relief if the essential elements of a cause of action are not properly pled, and eventually proved. Id. Here, the elements of a cause of action in equity are properly pled; therefore, it is appropriate for this Court to treat the Petition for Review as such.

12

It would have been preferable for Petitioner to have titled his Petition for Review correctly and this analysis should *not* be construed to mean that Counsel should not take care to identify the nature of the action in the pleading. However, the purpose of the procedural rules is to provide for the fair, orderly, and efficient consideration of cases. See Rule 105 of the Pennsylvania Rules of Appellate Procedure, Pa. R.A.P. 105 (providing that the "[r]ules shall be liberally construed to secure the just, speedy and inexpensive determination of every matter to which they are applicable"). As our Supreme Court has stated:

> Form must not be exalted over substance, and procedural errors must not be dispositive where there has been substantial compliance with the rules and no prejudice has resulted from purely technical error. . . . [P]leading is not intended to be a game of skill in which "one misstep by counsel may be decisive to the outcome."

In re Tax Claim Bureau, German Township, Mount Sterling 54 1/2 Acres, Miscellaneous Building, 436 A.2d 144, 146 (Pa. 1981) (quoting Foman v. Davis, 371 U.S. 178, 181-82 (1962)). The Supreme Court has further instructed that "[a]ctions brought in the wrong form should not be dismissed, but should be regarded as having been filed in the proper form, although amendment may be required if necessary for clarification." Commonwealth, Auditor General v. Borough of East Washington, 378 A.2d 301, 304 (Pa. 1977). In actuality, this Petition for Review requests declaratory and injunctive relief and no amendment is necessary.

In sum, we will consider this Petition for Review as if filed "in the nature of a declaratory judgment" and overrule the PSP's PO alleging that Petitioner's claims are barred by the statute of limitations applicable to a mandamus action and

13

that mandamus will not lie because the PSP lacks a mandatory duty to provide the relief requested.

We now proceed to address the PSP's challenges to the legally sufficiency of Petitioner's constitutional claims.

## 2. Ex Post Facto

Both the United States and Pennsylvania Constitutions prohibit the General Assembly from passing ex post facto laws. U.S. Const. Art. I, § 10 (stating "[n]o State shall . . . pass any Bill of Attainder, ex post facto Law, or Law impairing the Obligation of Contracts . . . ."); Pa. Const. art. I, § 17 (stating that "[n]o ex post facto law, nor any law impairing the obligations of contracts, or making irrevocable any grant of special privileges or immunities, shall be passed"). A law violates the Ex Post Facto Clauses of both the United States and Pennsylvania Constitutions if the law

> (1) makes an action done before the passing of the law, and which was innocent when done, criminal, and punishes such action; (2) aggravates a crime, or makes it greater than it was when committed; (3) *changes the punishment, and inflicts a greater punishment than the law annexed to the crime when committed*; or (4) alters the legal rules of evidence, and receives less, or different, testimony than the law required at the time of the commission of the offense in order to convict the offender.

Commonwealth v. Allshouse, 36 A.3d 163, 184 (Pa. 2012) (emphasis added).

Petitioner alleges that the requirements imposed upon him by SORNA significantly differ from the requirements imposed upon him by previous versions

of Megan's Law. Petitioner alleges that while the registration requirements of previous versions of Megan's Law were deemed collateral consequence of a conviction and not punitive in nature, SORNA's requirements are dramatically different and represent punishment akin to probation. Petitioner further alleges that SORNA creates a severe hardship upon him because, unlike previous versions of Megan's Law, there are no means available for him to seek relief from the internet notification provision. The PSP contends that Petitioner has not stated a claim under the Ex Post Facto Clauses of the United States and Pennsylvania Constitutions because courts of this Commonwealth have concluded that the registration provisions of SORNA and previous versions of Megan's Law are non-punitive. Further, the General Assembly expressly stated that SORNA is non-punitive. See Section 9799.11(b)(2) of SORNA, 42 Pa. C.S. § 9799.11(b)(2) (stating that the registration and notification provisions of SORNA "shall not be construed as punitive").

With regard to whether the specific *registration requirements* of SORNA pose ex post facto concerns, we recently conducted an extensive review of those requirements in Coppolino and concluded that the registration requirements, save Section 9799.15(g), 42 Pa. C.S. § 9799.15(g) (requiring those convicted prior to SORNA to provide in-person updates to registration information), are not punitive and pose no ex post facto concerns. Coppolino, 102 A.3d at 1278-79. Based on Coppolino, which was affirmed by the Pennsylvania Supreme Court, the only registration requirement of SORNA that is punitive, as applied to Petitioner, is Section 9799.15(g) and that requirement must not be imposed upon him.

15

Accordingly, the PSP's PO to Petitioner's ex post facto challenge to SORNA's registration requirements is sustained in accordance with <u>Coppolino</u>.

However, SORNA imposes both registration and notification requirements upon sexual offenders, and our decision in <u>Coppolino</u> did not address whether SORNA's *internet notification provision* constitutes an ex post facto law. The PSP's POs do not specifically address SORNA's internet notification provision and the authorities offered to support its contention that *all* of SORNA's requirements pose no ex post facto concerns are silent regarding internet notification.

The United States Supreme Court examined whether the internet notification provision of Alaska's Megan's Law was an ex post facto law under the federal constitution in <u>Smith v. Doe</u>, 538 U.S. 84 (2003). In <u>Smith</u>, the Court held that the internet publication of accurate information is not punitive and, therefore, poses no ex post facto concern under the United States Constitution. <u>Id.</u> at 98. According to the Court:

> [T]he stigma of Alaska's Megan's Law results not from public display for ridicule and shaming but from the dissemination of accurate information about a criminal record, most of which is already public. Our system does not treat dissemination of truthful information in furtherance of a legitimate governmental objective as punishment. . . The fact that Alaska posts the information on the Internet does not alter our conclusion. It must be acknowledged that notice of a criminal conviction subjects the offender to public shame, the humiliation increasing in proportion to the extent of the publicity. And the geographic reach of the Internet is greater than anything which could have been designed in colonial times. These facts do not render Internet notification punitive. The purpose and the principal effect of notification are to inform the public for its own safety, not to

16

humiliate the offender. Widespread public access is necessary for the efficacy of the scheme, and the attendant humiliation is but a collateral consequence of a valid regulation.

Id. at 98-99. The internet notification provision of Alaska's Megan's Law mirrors SORNA's internet notification provision in most relevant aspects.[13] We, thus, conclude that the internet notification provision of SORNA does not constitute an ex post facto law under the United States Constitution when applied to Petitioner, and we sustain the PSP's PO in this regard.

However, "discharging the federal constitutional claim does not automatically terminate our inquiry." Gaffney, 733 A.2d at 621. Our Supreme Court has long held that, when called upon to interpret provisions of the Pennsylvania Constitution, we are not bound by the interpretations of similar provisions of the United States Constitution made by the United States Supreme Court. Commonwealth v. Edmunds, 586 A.2d 887, 894 (Pa. 1991). "Although we may accord weight to federal decisions" when they address underlying specific

_____

[13] Under Alaska's Megan's Law:

Information about a sex offender or child kidnapper that is contained in the central registry, including sets of fingerprints, is confidential and not subject to public disclosure except as to the sex offender's or child kidnapper's name, aliases, address, photograph, physical description, description of motor vehicles, license numbers of motor vehicles, and vehicle identification numbers of motor vehicles, place of employment, date of birth, crime for which convicted, date of conviction, place and court of conviction, length and conditions of sentence, and a statement as to whether the offender or kidnapper is in compliance with requirements of A[laska] S[tat.] [§] 12.63 or cannot be located.

Alaska Stat. § 18.65.087(b). Although "[t]he Act does not specify the means by which the registry information must be made public[,] Alaska has chosen to make most of the nonconfidential information available on the Internet." Smith, 538 U.S. at 91.

17

constitutional guarantees, "it is both important and necessary that we undertake an independent analysis of the Pennsylvania Constitution, each time a provision of that fundamental document is implicated." Id. at 894-95. When there is compelling reason to do so, we may interpret our constitution as affording greater protections than the federal constitution. Gaffney, 733 A.2d at 621.

The PSP has neither pointed to any binding authority, and we have found none, addressing whether SORNA's internet notification provision is punitive for purposes of the Ex Post Facto Clause of the Pennsylvania Constitution. Nor has the PSP shown with certainty that the Ex Post Facto Clause of the Pennsylvania Constitution does not provide more extensive rights than its federal counterpart.

In Commonwealth v. Ackley, 58 A.3d 1284, 1287 (Pa. Super. 2012), the Superior Court held that the internet notification provision of Megan's Law III was not punitive for purposes of the Ex Post Facto Clause of the Pennsylvania Constitution.[14] In that case, Ackley was convicted of rape in 1986 and was subject to the registration requirements of Megan's Law II after his release from

---

[14] Section 9798.1 of Megan's Law III, 42 Pa. C.S. § 9798.1 (expired December 20, 2012, pursuant to 42 Pa. C.S. § 9799.41). Section 9798.1(c) provided that the internet website maintained by the PSP shall contain the following information:

> (i) Name and any aliases; (ii) year of birth; (iii) the street address, city, county and zip code of all residences; (iv) the street address, city, county and zip code of any institution or location at which the person is enrolled as [a] student; (v) the city, county and zip code of any employment location; (vi) a photograph of the offender, which shall be updated not less than annually; (vii) a description of the offense or offenses which trigger the application of [the registration requirement]; and (viii) the date of the offense and conviction, if available.

42 Pa. C.S. § 9798.1(c).

18

incarceration. Id. at 1285. Ackley's registration information was exposed to public dissemination via the internet upon the enactment of Megan's Law III in 2004. Id. at 1286. Ackley petitioned the trial court for exemption from the internet notification provision pursuant to Section 9795.5 of Megan's Law III, 42 Pa. C.S. § 9795.5 (expired December 20, 2012, pursuant to 42 Pa. C.S. § 9799.41), which allowed sexual offenders to petition sentencing courts to exempt them from internet notification. Id. The trial court denied Ackley's petition, and the Superior Court affirmed. In holding that the internet notification provision of Megan's Law III was not punitive, the Superior Court likened the punitive effects of internet notification to the punitive effects of the notification provision applicable to sexually violent predators under Megan's Law II. The Superior Court adopted the Supreme Court's reasoning in Gomer Williams, wherein the Supreme Court stated:

> The critical issue for our present purposes is that, even to the extent that notification under Megan's Law II may have some punitive effect in terms of shaming the sex offender, such effect has not been demonstrated to be sufficient in itself to render the challenged measures criminal punishment for constitutional purposes. For one thing, whether a sanction constitutes punishment is not determined from the defendant's perspective, as even remedial sanctions carry the sting of punishment. Equally important, any punitive effect that results from being designated a sexually violent predator is not gratuitous, but rather, an inevitable consequence of the effectuation of the law's remedial objective of protecting vulnerable members of the public. Thus, unlike shaming punishments such as stocks and cages— where there would have been alternative means of notifying the community that a certain individual had committed a particular crime—the notification provisions of Megan's Law appear to be reasonably calculated to accomplish self-protection only, and not to impose additional opprobrium upon the offender unrelated to that goal.

Id. at 1287 (quoting Gomer Williams, 832 A.2d at 976).

19

However, Ackley addressed the internet notification provision of Megan's Law III, not the more expansive internet notification provision of SORNA, and so the question of whether these more expansive provisions comport with the Ex Post Facto Clause of the Pennsylvania Constitution was not at issue in that case.[15] In addition, the Superior Court's reasoning in Ackley relies on the Supreme Court's analysis of the punitive effects of the notification provisions of Megan's Law *II* in Gomer Williams, which were applicable only to those individuals adjudged to be sexually violent predators and did not require notification to the public via the internet. Id. The Superior Court adopted the reasoning in Gomer Williams without independently determining whether the internet notification provision under Megan's Law *III* was excessive to meet the General Assembly's non-punitive purpose in enacting the provision. See Gomer Williams, 832 A.2d at 982 (quoting Smith, 538 U.S. at 105) (stating that the crux of its inquiry is "'whether the regulatory means chosen are reasonable in light of the nonpunitive objective' sought to be achieved"). Additionally, the Superior Court in Ackley was confronted with Ackley's petition for relief under Section 9795.5 of Megan's Law III. That expired provision gave sexual offenders the right to petition sentencing courts for an exemption of the internet notification provision of Megan's Law III, but SORNA contains no such exemption provision. Thus, unlike Ackley, Petitioner here is given no recourse to the courts to request that he be exempt from SORNA's internet notification provision.

---

[15] We note that, even if Ackley was on point, we are "not bound by the Superior Court's precedents although, where persuasive, we are free to adopt the Superior Court's reasoning." Wertz v. Chapman Township, 709 A.2d 428, 433 n.8 (Pa. Cmwlth. 1998).

More recently, in Commonwealth v. Perez, 97 A.3d 747, 759 (Pa. Super. 2014), which was cited by the PSP, the Superior Court held that the SORNA *registration* requirements pose no ex post facto concerns under the United States Constitution. The Superior Court in that case declined to consider whether the Pennsylvania Constitution provides greater protections than the United States Constitution as it relates to SORNA. Id. at 760 (stating "[b]ecause we have already resolved his federal *ex post facto* claim . . . and Appellant does not argue that the Pennsylvania Constitution provides higher protection, his claim under the Pennsylvania Constitution likewise fails." (emphasis in original)). Although the majority opinion in Perez does not discuss SORNA's internet notification provision, the concurring opinion of Judge Donohue expresses concern over the impact of internet notification in light of changes to technology and societal habits. Judge Donohue reasoned:

> Yesterday's face-to-face shaming punishment can now be accomplished online, and an individual's presence in cyberspace is omnipresent. The public internet website utilized by the Pennsylvania State Police broadcasts worldwide, for an extended period of time, the personal identification information of individuals who have served their "sentences." This exposes registrants to ostracism and harassment without any mechanism to prove rehabilitation—even through the clearest proof. In my opinion, the extended registration period and the worldwide dissemination of registrants' information authorized by SORNA now outweighs the public safety interest of the government so as to disallow a finding that it is merely regulatory. . . . This, to me, is the closest of cases. Had Perez not conceded that the first prong of the Smith test had been met, my decision in his case may have been different. Moreover, *a challenge under the Pennsylvania State Constitution may have yielded a different result*.

Perez, 97 A.3d at 765-66 (Donohue, J., concurring) (emphasis added).

Having concluded that case law provides no clear answers, and because of the early stage of these proceedings, we cannot say with certainty that Pennsylvania Constitution's Ex Post Facto Clause does not provide more protection than its federal counterpart with regard to the internet notification provision of SORNA. Accordingly, we overrule the PSP's POs with regard to this claim.

## 3. Procedural Due Process

Article I, Section 1 of the Pennsylvania Constitution states that "[a]ll men are born equally free and independent, and have certain inherent and indefeasible rights, among which are those of enjoying and defending life and liberty, of acquiring, possessing and protecting property and reputation, and of pursuing their own happiness." Pa. Const. art. I, § 1. Unlike the Due Process Clause of the Fourteenth Amendment, our Supreme Court has acknowledged that reputation is protected under Article I, Section 1 of the Pennsylvania Constitution. See R. v. Department of Public Welfare, 636 A.2d 142, 149 (Pa. 1994) (discerning a fundamental right to reputation under the Pennsylvania Constitution). Accordingly, reputation is among the fundamental rights that cannot be abridged without compliance with state constitutional standards of due process. Id.

Petitioner's procedural due process challenge focuses on SORNA's bedrock "presumption that all sexual offenders 'pose a high risk of committing additional sexual offenses . . . .'" (Petition for Review ¶ 20 (quoting 42 Pa. C.S. § 9799.11(a)(4)).) Because, under SORNA, all individuals previously convicted of a sexual offense are presumed to pose a high risk of re-offense, SORNA's

22

registration scheme does not provide offenders with an opportunity to challenge their registration requirements by establishing to a fact finder that the offender has reformed and no longer poses a threat to the public. See Section 9799.23(b) of SORNA, 42 Pa. C.S. § 9799.23(b) (providing that courts shall not have the authority, with certain exceptions, to relieve a sexual offender from the duty to register.) Thus, under SORNA, individuals convicted of sexually violent offenses are required to register without a determination regarding the offender's level of dangerousness and likelihood of re-offense ever being made.

Our Supreme Court recently assessed the constitutionality of this presumption as applied to juveniles sexual offenders in J.B., 107 A.3d at 14. The Supreme Court began its analysis in J.B. by considering whether the juvenile petitioners had a right protected by the due process clause of the Pennsylvania Constitution. As explained by the Supreme Court:

> SORNA explicitly declares that sexual offenders, including juvenile offenders, "pose a high risk of committing additional sexual offenses and protection of the public from this type of offender is a paramount governmental interest." 42 Pa. C.S. § 9799.11(a)(4). Indeed, a primary purpose of SORNA is to inform and warn law enforcement and the public of the potential danger of those registered as sexual offenders . . . . [T]he common view of registered sexual offenders is that they are particularly dangerous and more likely to reoffend than other criminals. Thus, SORNA registration requirements, premised upon the presumption that all sexual offenders pose a high risk of recidivating, impinge upon juvenile offenders' fundamental right to reputation as protected under the Pennsylvania Constitution.

J.B., 107 A.3d at 16-17.

After determining that the juvenile petitioners had a protected right to their reputations, the Supreme Court summarized its case law outlining the "irrebuttable presumption doctrine" as providing that "irrebuttable presumptions are violative of due process where the presumption is deemed not universally true and a reasonable alternative means of ascertaining that presumed fact are available." Id. at 15 (quoting Department of Transportation, Bureau of Driver Licensing v. Clayton, 684 A.2d 1060, 1063 (Pa. 1996)). The Supreme Court cited studies credited by the trial court that showed juvenile sexual offenders exhibit levels of recidivism that "are indistinguishable from the recidivism rates of non-sexual juvenile offenders." Id. at 17. Based on these studies and other societal knowledge gleaned from statutes and case law, the Supreme Court concluded that SORNA's registration requirements "improperly brand all juvenile offenders' reputations with an indelible mark of a dangerous recidivist, even though the irrebuttable presumption linking adjudication of specified offenses with a high likelihood of recidivating is not 'universally true.'" Id. at 19. The Supreme Court then determined that a reasonable alternative means to ascertain whether the juvenile offenders represented a recidivism risk was available in the form of a hearing similar to the hearing required before classifying an offender as a sexually violent predator pursuant to Section 9799.24 of SORNA, 42 Pa. C.S. § 9799.24. J.B., 107 A.3d at 19. Concluding that the "irrebuttable presumption doctrine" was satisfied, the Supreme Court held that the lifetime registration requirement was unconstitutional as applied to juveniles because it encroached upon the juvenile petitioners' constitutionally protected interest in their reputation without due process of law. Id. at 19-20.

24

The Supreme Court's holding in J.B. is limited to juvenile offenders. However, the decision provides this Court with insight on how Petitioner's claim should be analyzed. Under J.B., we first consider whether Petitioner has asserted an interest protected by due process. Petitioner avers that he has a right to reputation encroached upon by SORNA's irrebuttable presumption. The PSP offers no argument that Petitioner's right to reputation is not infringed by SORNA and we, therefore, presume that Petitioner has sufficiently alleged such. Nor does the PSP dispute Petitioner's allegation with regard to the final step of the irrebuttable presumption doctrine: that reasonable alternative means exist to determine whether Petitioner poses a high risk of recidivism. Accordingly, we shall focus on whether Petitioner alleges facts that, when accepted as true, shows that it is not "universally true" that adult offenders pose a heightened risk of recidivism.

Petitioner's allegations point to studies showing that "sexual offenders have very low rates of recidivism in general." (Petition for Review ¶ 17 n.1.) According to Petitioner, SORNA's irrebuttable presumption is "based on speculation and conjecture despite firm evidence to the contrary . . . ." (Petition for Review ¶ 17.) In response to Petitioner's averments, the PSP argues that Petitioner cannot satisfy the universality factor of the irrebuttable presumption doctrine and points to previous decisions by the Pennsylvania and United States Supreme Courts, in which the courts have stated that recidivism rates of all sexual offenders are high. See Smith, 538 U.S. at 103 (noting the "grave concerns over the high rate of recidivism among convicted sex offenders"); Commonwealth v. Lee, 935 A.2d 865, 885 (Pa. 2007) (stating recidivism rates of sexual offenders are

25

"sufficiently high to warrant careful record-keeping and continued supervision"). Although the cases cited by the PSP are persuasive, we decline to conclusively resolve factual questions based on statements made in judicial decisions that are nearly a decade old. Sociological and psychological facts that serve as predicates to judicial decisions may be re-tested based on newly developed research and increases in human understanding. The Petition for Review cites to studies supporting Petitioner's allegation that it is not universally true that sexual offenders always pose a high risk of re-offense that were published years after Smith and Lee were decided. When reviewing preliminary objections, this Court must treat all well-pleaded facts and any reasonable inference from those facts as true. Russo v. Allegheny County, 125 A.3d 113, 116 n.5 (Pa. Cmwlth. 2015). Just as the petitioners in J.B. were entitled to prove their allegations with regard to recidivism rates of juvenile offenders, notwithstanding previous judicial findings to the contrary, Petitioner must be afforded an opportunity to present his proof. Accordingly, the PSP's PO alleging that Petitioner cannot satisfy the universality factor of the irrebuttable presumption doctrine is overruled.

The PSP also argues that Petitioner's procedural due process challenge fails because the United States Supreme Court has held that sexual offenders asserting procedural due process challenge to their status under state sex offenders' registries must show that the fact they are challenging is relevant to the state statutory scheme. Connecticut II, 538 U.S. at 7-8.

In that case, the plaintiff argued that Connecticut's sex offender law violated his procedural due process rights under the Fourteenth Amendment because his

26

liberty interests were deprived without notice or a meaningful opportunity to be heard. Doe v. Department of Public Safety ex rel. Lee, 271 F.3d 38, 46 (2d Cir. 2001) (Connecticut I), rev'd on other grounds by Connecticut II. During its adjudication of the case, the United States Court of Appeals for the Second Circuit applied the so-called "stigma plus" test and held that plaintiff was deprived of his liberty interest in reputation under the Fourteenth Amendment by the statutory provisions requiring public notification of a sex offender's private information over the internet coupled with the law's registration requirements. Id. at 59-60. Specifically, the Second Circuit held that Connecticut's Act violated sexual offenders' due process rights because officials did not afford offenders a pre-deprivation hearing to determine whether they are likely to be currently dangerous. Id. at 61. Upon review, the Supreme Court reversed. The Supreme Court found it unnecessary to reach the question of whether the plaintiff's liberty interest in reputation was deprived. Connecticut II, 538 U.S. at 7. According to the Supreme Court, "even assuming, *arguendo*, that respondent has been deprived of a liberty interest, due process does not entitle him to a hearing" because whether or not the respondent was currently dangerous was immaterial to Connecticut's statutory scheme. Id. Instead of overruling the Second Circuit's due process reasoning directly, the Supreme Court established a rule that "[p]laintiffs who assert a right to a hearing under the Due Process Clause must show that the facts they seek to establish in that hearing are relevant under the statutory scheme." Id. at 8.

Applying the rule to this case, the question of whether the facts Petitioner seeks to challenge are relevant to SORNA's statutory scheme is inextricably linked to the merits of Petitioner's claim that SORNA's irrebuttable presumption violates

his procedural due process rights. If Petitioner can prove that SORNA's irrebuttable presumption is not universally true and a reasonable alternative forum exists to adjudicate whether he poses a high risk of re-offense, then whether Petitioner is currently a recidivism risk is an inquiry relevant to SORNA's statutory scheme. If, however, Petitioner cannot prove his contention with regard to SORNA's irrebuttable presumption, then Petitioner would not be entitled to a hearing on whether he poses a high risk of recidivism or is currently dangerous. Accordingly, we are constrained to overrule the PSP's PO in this regard. The matter may be revisited should Petitioner fail to prove his claim that SORNA's irrebuttable presumption violates his due process rights.

The PSP's final argument with regard to Petitioner's due process challenge is that Petitioner cannot assert a due process challenge to SORNA unless the alleged infringement upon Petitioner's rights is punitive in nature. The PSP alleges that because this Court, in <u>Coppolino</u>, held that SORNA's requirements are not punitive, Petitioner's due process challenge must fail. (POs ¶ 65 n.5.) As support for this argument, the PSP cites to a footnote in the Supreme Court's decision in <u>Gomer Williams</u>, where the Court states: "the question of whether the additional sanctions imposed under Megan's Law II are punitive in nature is the threshold due process inquiry." <u>Gomer Williams</u>, 832 A.2d at 970 n.13.

Contrary to the PSP's argument, we do not read the Supreme Court's footnote in <u>Gomer Williams</u> as limiting the circumstances under which individuals are entitled to procedural due process under the Pennsylvania Constitution to *only* those situations where the infringement upon the right asserted is punitive in

28

nature. Such a broad understanding could have serious consequences on this Court's due process jurisprudence as we have never held that due process is only implicated when the government actor is acting in a punitive, rather than regulatory, manner. Instead, we understand this footnote as addressing the issues specific to that case before the Court, wherein the petitioner argued that certain liberty interests protected by the Fourteenth Amendment to the United States Constitution were infringed by the registration, notification, and counseling requirements of Megan's Law II that were applicable only to sexually violent predators. See Id. at 970 (stating: "[Appellees] assert that the registration, notification, and counseling requirements, in effect, impose additional punishment without first affording an offender adequate due process protections"). Our interpretation is bolstered by the fact that the Supreme Court in J.B., when confronted with allegations that the juvenile offenders' reputational interests were infringed by SORNA's internet notification provision, did not first consider whether the infringement upon the petitioners' reputations was punitive in nature. As the Supreme Court refrained from engaging in such an analysis in J.B., we do so as well. We therefore overrule the PSP's POs insofar as the PSP alleges that Petitioner is incapable of stating a due process claim unless Petitioner first shows that the alleged infringement upon his reputation is punitive.

### 4. Substantive Due Process

Although the words "substantive due process" are absent from Petitioner's Brief or Petition for Review, Petitioner alleges that SORNA "is not [narrowly] tailored to meet the desired government['s] interest" because SORNA and other sexual "offender registration laws, even when applied to more serious and violent

29

offenders, have never been shown to reduce recidivism or rationally target those who are likely to reoffend." (Petition for Review ¶¶ 16-17.) Petitioner cites to published studies allegedly showing relatively low recidivism rates for sexual offenders and that sexual offender registration regimes have no appreciable impact on recidivism. (Petition for Review ¶ 17 n.1.) Through these allegations, Petitioner has implicitly asserted a substantive due process challenge to SORNA. We will construe the PSP's PO addressing Petitioner's due process claim as including a demurrer to Petitioner's substantive due process claim.

The substantive component of the Due Process Clause provides protection against government interference with certain fundamental rights and liberty interests. Khan v. State Board of Auctioneer Examiners, 842 A.2d 936, 946 (Pa. 2004). Where the right affected is fundamental, "such as the right to privacy, the right to marry, and the right to procreate," strict judicial scrutiny is applied and the statute "may only be deemed constitutional if it is narrowly tailored to a compelling state interest." Nixon v. Commonwealth, 839 A.2d 277, 287 (Pa. 2003). If the laws restrict other important, though not fundamental, rights, we will uphold the statute if it seeks to achieve a valid state objective by means that are rationally related to that objective. Khan, 842 A.2d at 946.

Like procedural due process, "for substantive due process rights to attach there must first be the deprivation of a[n] . . . interest that is constitutionally protected." Khan, 842 A.2d at 946. Petitioner alleges that his constitutionally protected reputational interest under the Pennsylvania Constitution is infringed upon by SORNA. Assuming this allegation is true, Petitioner's fundamental right

30

to reputation may only be abridged if SORNA is narrowly tailored to advance a compelling state interest. Pennsylvania Bar Association v. Commonwealth, 607 A.2d 850, 857 (Pa. Cmwlth. 1992).

An extensive review of the law has shown that courts of this Commonwealth have not specifically addressed whether SORNA's registration and notification provisions are narrowly tailored to meet the government's compelling interest in protecting the public.[16] Nor have courts assessed whether the public distribution of a sexual offender's personal information on a government website violates

---

[16] In Doe v. Miller, 886 A.2d 310, 314 (Pa. Cmwlth. 2005), we dismissed a class action claim that Megan's Law II violated class members' substantive due process rights. Instead of addressing the merits of the class's claims, we concluded that because the class in that case failed to adequately allege which fundamental right protected by due process was infringed by Megan's Law II, the class failed to state a substantive due process claim. Id.

In Commonwealth v. Howe, 842 A.2d 436 (Pa. Super. 2004), the Superior Court held that "[b]alancing the unobtrusive registration provision of Megan's Law with the Commonwealth's compelling interest in public safety, we find the momentary inconvenience of disclosing . . . information" as required by Megan's Law II's *registration requirements* are "clearly outweighed by the Commonwealth's compelling interest in public safety." Id. at 446-47 (emphasis added). At first glance, Howe's holding appears on point with regard to SORNA's *registration requirements*. Crucially, however, the Superior Court has never addressed whether the registration and notification requirements of SORNA are narrowly tailored to meet the government's compelling interest. Further, the requirements of SORNA are more onerous than those in Megan's Law II that were assessed by the Superior Court in Howe.

Similarly, in Commonwealth v. Mountain, 711 A.2d 473, 477 (Pa. Super. 1998), the Superior Court found no merit to a sexual offender's substantive due process claim to Megan's Law I because the appellant "cannot present any evidence suggesting alienation would result from the registration requirement." Id. at 476. However, the Superior Court in that case only examined the registration requirements of Megan's Law I. Under Megan's Law I, information was only given to law enforcement. See Gaffney, 733 A.2d at 621 (stating that under Megan's Law I, registration information "is given solely to the chief law enforcement officer of the police department having primary jurisdiction of the municipality in which the registrant resides").

substantive due process. Further, the United States Supreme Court has not addressed this issue. See Connecticut II, 538 U.S. at 8 (addressing Connecticut's Megan's Law and "express[ing] no opinion as to whether Connecticut's Megan's Law violates principles of substantive due process"). Because it is not clear at this time that Petitioner is not entitled to relief, his substantive due process claim must be answered by the PSP.

**V. Conclusion**

We understand the danger posed by sexual predators, and the efforts of the General Assembly and law enforcement to protect the public from those who would prey on our children and other victims. It is our duty to uphold the constitutional protections for all our citizens, including those who have been convicted of sexual offenses. At this very preliminary stage, given the allegations and arguments before us and our standard of review, under which we accept as true for this motion only, all the facts as pled by Petitioner, we cannot state with certainty that the law will permit no recovery. For the foregoing reasons, we hold as follows: (1) the PSP's PO in the nature of a demurrer alleging that Petitioner failed to state a claim because Petitioner is properly classified under SORNA is overruled; (2) the PSP's PO in the nature of a demurrer alleging that Petitioner's claims are barred by the applicable statute of limitations and that mandamus will not lie against the PSP because the PSP is incapable of providing the relief requested is overruled; (3) the PSP's PO in the nature of a demurrer alleging that Petitioner has not stated a claim challenging SORNA's internet notification provision under the Ex Post Facto Clause of the Pennsylvania Constitution is overruled; (4) the PSP's PO in the nature of a demurrer alleging that Petitioner does not have a right to be heard on factual issues irrelevant to his classification status is overruled; (5) the PSP's PO in the nature of a demurrer alleging that

Petition cannot state a due process claim without first showing that the deprivation of his reputational interests is punitive is overruled; (6) the PSP's PO in the nature of a demurrer alleging that Petitioner is incapable of proving that SORNA's irrebuttable presumption is not universally true and violates his procedural due process rights under the Pennsylvania Constitution is overruled; (7) the PSP's PO in the nature of a demurrer to Petitioner's substantive due process challenge under the Pennsylvania Constitution is overruled; and (8) the PSP's POs are sustained with regard to the remainder of Petitioner's claims and these claims are dismissed with prejudice.

_____

**RENÉE COHN JUBELIRER, Judge**

# IN THE COMMONWEALTH COURT OF PENNSYLVANIA

Jeremy Taylor,                                         :
                                                       :
                          Petitioner                   :
                                                       :
          v.                                           :     No. 532 M.D. 2014
                                                       :
The Pennsylvania State Police of the                   :
Commonwealth of Pennsylvania,                          :
                                                       :
                          Respondent                   :

# **O R D E R**

**NOW**, January 12, 2016, the Pennsylvania State Police's (PSP) Preliminary Objections to the Amended Petition for Review in the above-captioned matter are **OVERRULED**, in part, and **SUSTAINED**, in part, as follows:

(1) The PSP's preliminary objection in the nature of a demurrer to the Amended Petition for Review alleging that Jeremy Taylor (Petitioner) was properly classified under the Sexual Offender Registration and Notification Act (SORNA) is **OVERRULED**;

(2) The PSP's preliminary objection in the nature of a demurrer to the Amended Petition for Review alleging that the claims asserted are barred by the applicable statute of limitations is **OVERRULED**;

(3) The PSP's preliminary objection in the nature of a demurrer to the Amended Petition for Review alleging that mandamus will not lie against the PSP is **OVERRULED**;

(4) The PSP's preliminary objection in the nature of a demurrer to Petitioner's ex post facto challenge to SORNA's internet notification provision, 42 Pa. C.S. § 9799.28(a), under the Pennsylvania Constitution as set forth in the Amended Petition for Review is **OVERRULED**;

(5) The PSP's two preliminary objections in the nature of a demurrer to Petitioner's procedural due process challenges under the Pennsylvania Constitution in relation to SORNA's irrebuttable presumption as set forth in the Amended Petition for Review are **OVERRULED**;

(6) The PSP's preliminary objection in the nature of a demurrer to Petitioner's substantive due process challenge under the Pennsylvania Constitution as set forth in the Amended Petition for Review is **OVERRULED**;

(7) The PSP shall file an Answer to Petitioner's claims, set forth in Petitioner's Amended Petition for Review, that SORNA violates procedural and substantive due process under the Pennsylvania Constitution, and that Section 9799.28(a) of SORNA is an ex post

facto law under the Pennsylvania Constitution within thirty (30) days of the date of this Order;

(8) The PSP's preliminary objections are **SUSTAINED** with regard to the remaining claims set forth in the Amended Petition for Review; and

(9) Petitioner's remaining claims are **DISMISSED WITH PREJUDICE**.


_____
**RENÉE COHN JUBELIRER, Judge**

# IN THE COMMONWEALTH COURT OF PENNSYLVANIA

Jeremy Taylor,                          :
                    Petitioner          :
                                        :
          v.                            :     No. 532 M.D. 2014
                                        :     Argued:  September 16, 2015
The Pennsylvania State Police of the    :
Commonwealth of Pennsylvania,           :
                    Respondent          :


BEFORE:     HONORABLE DAN PELLEGRINI, President Judge
            HONORABLE BERNARD L. McGINLEY, Judge
            HONORABLE BONNIE BRIGANCE LEADBETTER, Judge
            HONORABLE RENÉE COHN JUBELIRER, Judge
            HONORABLE MARY HANNAH LEAVITT, Judge
            HONORABLE P. KEVIN BROBSON, Judge
            HONORABLE ANNE E. COVEY, Judge


**CONCURRING AND DISSENTING**
**OPINION BY JUDGE LEADBETTER**          **FILED:  January 12, 2016**


          I dissent from that portion of the majority opinion which overrules PSP's preliminary objections to petitioners' *ex post facto* claims regarding internet notification. Otherwise, I agree with the thorough and well reasoned discussion of the merits of the remaining claims. Because of this agreement, and because of the procedural posture of this case, I concur in the result of the balance of the majority opinion.

          However, I do not join the balance of the opinion and write separately to point out that there are important differences between distinct causes of action and it is not the job of courts to parse factual allegations and re-frame pleadings to

rectify the mistakes of counsel.[1]  The nature of the cause of action before the court affects considerations of statute of limitations, immunity, subject matter jurisdiction, etc.  If, say, a contract claim is asserted but the recited facts allege the elements of negligence or perhaps some statutory claim, how is the respondent to know whether to reply to the pleading or to some manner in which the court may re-fashion it? I understand the Court's reasons for making an exception here, but I firmly believe that ordinarily the proper course is to dismiss without prejudice and require the petitioner to clarify his intent.

---

**BONNIE BRIGANCE LEADBETTER,**
Judge

---

[1] How flexible we might be with *pro se* litigants is another matter which I will not address here.