**[J-30-2017] [MO: Saylor, C.J.]**
**IN THE SUPREME COURT OF PENNSYLVANIA**
**MIDDLE DISTRICT**

| | | |
|---|---|---|
| STEVEN KONYK, | : | No. 11 MAP 2016 |
| | : | |
| Appellant | : | Appeal from the Order of the |
| | : | Commonwealth Court at No. 538 MD |
| | : | 2014 dated January 12, 2016. |
| v. | : | |
| | : | SUBMITTED: March 27, 2017 |
| | : | |
| THE PENNSYLVANIA STATE POLICE | : | |
| OF THE COMMONWEALTH OF | : | |
| PENNSYLVANIA, | : | |
| | : | |
| Appellee | : | |

**CONCURRING AND DISSENTING OPINION**

**JUSTICE WECHT**                                                  **DECIDED: April 26, 2018**

As a threshold matter, I agree that Steven Konyk correctly named the Pennsylvania State Police ("PSP") as the respondent. The Majority cogently observes that the PSP has substantive obligations under SORNA,[1] including interpretation of state and federal criminal provisions, enforcement of statutory requirements, and, most importantly, creation and maintenance of the sexual offender registry.[2] Indeed, in *A.S. v. PSP*, 143 A.3d 896, 908 (Pa. 2016), we affirmed the issuance of a writ of mandamus compelling the PSP to take action similar to that which Konyk seeks here. PSP's claim that Konyk sued the wrong party finds no support under the circumstances of this case.

---

[1]     SORNA is the commonly used acronym for the "Sex Offender Registration and Notification Act," 42 Pa.C.S. §§ 9799.10-9799.41.

[2]     *See* Maj. Op. at 5-6; 42 Pa.C.S. § 9799.16 ("The Pennsylvania State Police shall create and maintain the registry.").

Proceeding to the merits, I find myself in both agreement and disagreement with the Majority's conclusions. As to the former, I agree that Konyk is not entitled to substantive relief under a third-party beneficiary theory. *See* Maj. Op. at 7-8. As to the latter, I disagree with the Majority's determination that Konyk cannot succeed on a claim asserting the existence of an implied contract. Thus, and for the reasons that follow, I respectfully dissent from the Majority's decision affirming the Commonwealth Court's denial of relief.[3]

"A contract implied in fact is an actual contract which arises where the parties agree upon the obligations to be incurred, but their intention, instead of being expressed in words, is inferred from [their] acts in the light of the surrounding circumstances." *Liss & Marion, P.C. v. Recordex Acquisition Corp.*, 983 A.2d 652, 659 (Pa. 2009) (*quoting Elias v. Elias*, 237 A.2d 215, 217 (Pa. 1968)). The statutory mandate imposing sexual offender supervision created an implied contract that bound this Commonwealth to the terms of Konyk's plea bargain.

In 2006, the United States Congress passed the Adam Walsh Child Protection and Safety Act of 2006, Public Law 109-248, 42 U.S.C. §§ 16901-16991. That federal enactment encouraged states, on pain of losing federal funding, to enact a tiered statutory structure imposing notification and registration requirements for convicted sexual offenders. *Commonwealth v. Muniz*, 164 A.3d 1189, 1203-04 (Pa. 2017). Pennsylvania responded by passing SORNA, which aimed "to bring the Commonwealth into substantial compliance with the [Adam Walsh Act]." *Id.* (citing 42 Pa.C.S. § 9799.10).

---

[3] Accordingly, I join parts I, II, and III(A) of the Majority Opinion. I do not join parts III(B) or III(C).

SORNA abandoned Megan's Law's dual classification system of ten-year reporting and lifetime reporting, replacing it with a three-tiered rubric designed to comply with the federal statute. Notably, SORNA does not govern only those convicted in a state court. SORNA's tiers, terms, and conditions also apply to federal defendants who are convicted of, or pleaded guilty to, a federal offense in a federal court. Under SORNA, an "offender" includes, *inter alia*, one who "on or after the effective date of this section, is, as a result of a conviction for a sexually violent offense, an inmate in a Federal correctional institution or is supervised by Federal probation authorities and who . . . has a residence within this Commonwealth." 42 Pa.C.S. § 9799.13(2.1)(i).

The relationship between the relevant parties is straightforward. Through its Adam Walsh legislation, Congress urged states to pass a law creating a tiered system for supervising sexual offenders. Our General Assembly responded by enacting SORNA. In so doing, this Commonwealth agreed to supervise all federal sexual offenders in Pennsylvania. Thus, every time a federal prosecutor offers a plea bargain to a defendant who lives, works, or attends school in this Commonwealth, that prosecutor knows that the defendant will be supervised by the PSP per the terms of the bargain. The defendant also is informed by the federal court that he will be supervised by the Commonwealth of Pennsylvania, not by the federal government. By enacting SORNA, this Commonwealth has agreed to accept and supervise those offenders. Through this statutory relationship, the Commonwealth has made itself a party to those federal plea bargains, and has done so willingly. To become a part of the process, the Commonwealth is not required to send a lawyer or probation officer or state trooper to the federal sentencing hearing. The Commonwealth has interposed itself implicitly, by statute. The federal prosecutor and the defendant both know this when negotiating the

plea, and the PSP knows this by accepting, per the terms of SORNA, supervision of federal offenders.

An implied contract arises when the parties first agree to the obligations to be incurred. By agreeing via SORNA to accept federal sexual offenders, Pennsylvania has undertaken the obligation at issue here. It is of no moment that the parties have not expressly stated their intentions. The ongoing and systematic statutory relationship demonstrates clearly the intent of the parties to abide by this agreement. Under these circumstances, the elements of an implied contract are manifest.

The effects of the Majority's contrary holding are disconcerting. Less than two years ago, this Court held that a criminal defendant is entitled to the benefit of the sexual offender reporting terms of his or her plea bargain, despite the fact that the subsequent enactment of SORNA would have altered those terms. *See Commonwealth v. Martinez*, 147 A.3d 517 (Pa. 2016).[4] For example, when a defendant specifically bargained for charges that resulted in a ten-year reporting period, no change in the law could alter those terms. *Id.* at 532-33. *Martinez* held that a plea bargain is entitled to specific performance due, *inter alia*, to contract principles and the essential nature of the plea bargaining process. *Id.* at 531-33. Our holding did not turn upon the particular venue in which the plea was taken.

The same considerations should animate our ruling in this case. The federal prosecutor and Konyk both agreed to the terms of a plea bargain. Both parties are entitled to the benefit of their bargain. The effect of plea bargaining on the criminal justice system, and the mutual benefits that such bargains provide, are patent and

---

[4] In *Martinez*, we addressed three consolidated cases, which arose where three defendants each were awarded identical relief on identical claims by the same trial judge. *Martinez*, 147 A.3d at 520.

unquestionable. The only thing that distinguishes this case from *Martinez* at this juncture is that Konyk pleaded guilty in a federal forum rather than in a state court.[5] The distinction should not matter. The *Martinez* considerations must apply with equal force to a federal plea bargain. Indeed, the distinction is rendered immaterial inasmuch as the Commonwealth by statute agreed to accept and supervise the federal defendants. Federal prosecutors reasonably cannot expect that the terms of their negotiated pleas are subject to alteration by state authorities. The Commonwealth must accept the offender as is, and, *per Martinez*, should be unable to change or revoke the bargain.

Federal prosecutors will be hesitant to offer plea deals, and federal defendants will be hesitant to accept them, if those agreements are subject to subsequent state amendment. Permitting such *post hoc* changes contravenes the rationales that drove our decision in *Martinez*. The promise of *Martinez* has proven illusory for Konyk. There is no justification for such disparate treatment.

Equity cannot countenance the unjust dichotomy created by the Majority's decision. Nonetheless, equity is not the basis for relief. Contract law is. SORNA

---

[5] As the Majority notes, because this case is at the preliminary objection stage, we are bound to accept Konyk's factual averments as true. *See* Maj. Op. at 1, n.1 (citing *Sernovitz v. Dershaw*, 127 A.3d 783, 785 n.2 (Pa. 2015)). In his petition, Konyk pled that the ten-year reporting term was "an important consideration" in his decision to plead guilty. *See* Petition for Review, 10/14/2014, at 6 ¶5. Accordingly, Konyk stands in a position similar to that occupied by the appellants in *Martinez*. For present purposes, the only factor that distinguishes this case from *Martinez* is the forum in which the plea was taken. This factual distinction does not serve to displace the applicability of any of the factors that we considered in reaching our *Martinez* decision. For preliminary objection purposes, there is no reason to posit some jurisprudential differentiation between the two cases, nor to deny Konyk the benefit of the *Martinez* holding.

Of course, before Konyk might be entitled to the full relief that he seeks, he must prove his factual averments to a fact-finder. Only then would he be able to establish that the sexual offender term was a negotiated factor in his plea, and that he is entitled to specific performance of that bargain. For today, it suffices to say that Konyk's averment of the bargain is adequate to overcome PSP's preliminary objections.

creates an implied contract between the federal government and this Commonwealth. It is the existence of this contract that compels the denial of PSP's preliminary objections.

Konyk has demonstrated that an implied contract existed, and that no viable principle precludes facial application of our rationale and holding in *Martinez*. These conclusions suffice to warrant denial of PSP's preliminary objections. I would remand the case to the Commonwealth Court for the case to be litigated in the normal course, and to allow for the development of a factual record sufficient to determine whether Konyk's averments entitle him to the benefits of *Martinez* and enforcement of his plea bargain. *See*, *supra*, note 5. Because the Majority denies this relief to Konyk, I respectfully dissent.

Justice Donohue and Justice Dougherty join this concurring and dissenting opinion.