IN THE COMMONWEALTH COURT OF PENNSYLVANIA

M.G.,                                        :
                        Petitioner           :
                                             :
            v.                               :   No. 201 M.D. 2019
                                             :   Submitted: November 22, 2019
Pennsylvania State Police,                   :
                        Respondent           :

BEFORE:    HONORABLE MARY HANNAH LEAVITT, President Judge
           HONORABLE ANNE E. COVEY, Judge
           HONORABLE CHRISTINE FIZZANO CANNON, Judge

OPINION NOT REPORTED

MEMORANDUM OPINION
BY PRESIDENT JUDGE LEAVITT                    FILED: September 25, 2020

             Before the Court in our original jurisdiction is an application for
summary relief filed by M.G., *pro se*, on his petition for declaratory and injunctive
relief filed against the Pennsylvania State Police.    M.G. challenges the
constitutionality of subchapter I of the Sexual Offender Registration and Notification
Act (SORNA II), 42 Pa. C.S. §§9799.10-9799.75.   M.G. contends, *inter alia*, that
SORNA II's registration and reporting provisions are punitive as applied to him, in
violation of the *ex post facto* clauses of the United States and Pennsylvania
Constitutions.[1]   M.G. requests this Court to enter a declaratory judgment that he is
not required to register as a sex offender under SORNA II.

---

[1] The United States Constitution provides, in pertinent part, that "[n]o … ex post facto Law shall
be passed." U.S. CONST. art. I, §9.  The Pennsylvania Constitution likewise provides, in pertinent
part, "[n]o *ex post facto* law … shall be passed." PA. CONST. art. I, §17.  "[T]he *ex post facto*
clauses of both constitutions are virtually identical, and the standards applied to determine an *ex
post facto* violation are comparable." *Evans v. Pennsylvania Board of Probation and Parole*, 820
A.2d 904, 909 (Pa. Cmwlth. 2003) (citing *Commonwealth v. Young*, 637 A.2d 1313, 1317 n.7 (Pa.
1993)).

We begin with a review of Pennsylvania's sex offender registration laws. Beginning in 1995, the General Assembly enacted a series of statutes requiring convicted sex offenders living within the Commonwealth to register with the State Police for varying periods of time. The first of these statutes was commonly known as Megan's Law, *former* 42 Pa. C.S. §§9791-9799.6. In 2000, the General Assembly enacted what is commonly referred to as Megan's Law II, *former* 42 Pa. C.S. §§9791-9799.7. In 2004, Megan's Law II was succeeded by Megan's Law III, *former* 42 Pa. C.S. §§9791-9799.75, which remained in effect until 2012. The Sexual Offender Registration and Notification Act (SORNA I), 42 Pa. C.S. §§9799.10-9799.41, replaced Megan's Law III.[2]

SORNA I was enacted, *inter alia*, to "comply with [federal law] and to further protect the safety and general welfare of the citizens of this Commonwealth by providing for increased regulation of sexual offenders, specifically as that regulation relates to the registration of sexual offenders and community notification about sexual offenders." *Taylor v. Pennsylvania State Police*, 132 A.3d 590, 595 (Pa. Cmwlth. 2016) (quoting *former* 42 Pa. C.S. §9799.11). SORNA I established, for the first time, a three-tier classification system for sexual offenders. The sex "offender's tier status [wa]s determined by the offense committed and impact[ed] the length of time an offender [wa]s required to register and the severity of punishment should an offender fail to register or provide false registration information." *Taylor*, 132 A.3d at 595 (citing *former* 42 Pa. C.S. §9799.15).

---

[2] In 2013, the Pennsylvania Supreme Court struck down Megan's Law III for violating the single subject rule of Article III, Section 3 of the Pennsylvania Constitution, PA. CONST. art. III, §3. *Commonwealth v. Neiman*, 84 A.3d 603, 616 (Pa. 2013). By the time Megan's Law III was struck down, it had been replaced by SORNA I.

SORNA I increased the length of registration for many offenders; required quarterly in-person reporting; and placed personal information about the registrant, such as his home address and place of employment, on the internet. In *Commonwealth v. Muniz*, 164 A.3d 1189 (Pa. 2017),[3] our Supreme Court held SORNA I to be unconstitutional because these provisions violated the prohibition against *ex post facto* laws.

Following the Supreme Court's decision in *Muniz*, the General Assembly enacted SORNA II, which has two subchapters. As our Supreme Court Court has explained,

> Subchapter H is based on the original SORNA [I] statute and is applicable to offenders … who committed their offenses after the December 20, 2012[,] effective date of SORNA [I]; Subchapter I is applicable to offenders who committed their offenses prior to the effective date of SORNA [I] and to whom the *Muniz* decision directly applied.[4]

---

[3] In *Muniz*, the petitioner had been convicted of two counts of indecent assault against a minor less than 13 years of age. At the time of his conviction, Megan's Law III required registration with the State Police for 10 years following the petitioner's release from incarceration. *Muniz*, 164 A.3d at 1193 (citing *former* 42 Pa. C.S. §9795.1). However, the petitioner absconded before sentencing. By the time he was apprehended and sentenced, SORNA I was in effect. Under SORNA I's new classification system, the petitioner was subject to lifetime registration. The petitioner challenged SORNA I as unconstitutional because it retroactively increased the length of his registration and notification requirements. The Pennsylvania Supreme Court held that the retroactive application of SORNA I's new tier system was an unconstitutional *ex post facto* law, to the extent that it imposed a lifetime registration requirement that was not applicable when the petitioner committed his crimes.

[4] Subchapter I applies to individuals who are:

> (1) *convicted of a sexually violent offense* committed on or after April 22, 1996, but before December 20, 2012, whose period of registration with the Pennsylvania State Police, as described in section 9799.55 (relating to registration), has not expired; or

3

*Commonwealth v. Butler*, 226 A.3d 972, 981 n.11 (Pa. 2020). Subchapter I requires offenders, upon their release from incarceration, to provide the State Police with information about their current or intended residences, employment, and enrollment as a student. 42 Pa. C.S. §9799.56(a)(1). In addition, offenders must notify the State Police "within three business days of" any changes in residence, employment or employment location, or enrollment status in an educational institution. 42 Pa. C.S. §9799.56(a)(2). Offenders must "appear within 10 days before each annual anniversary date of [their] initial registration ... at an approved registration site to complete a verification form and to be photographed." 42 Pa. C.S. §9799.60(b). Offenders who fail to comply with the registration and verification provisions "may be subject to prosecution under [Section 4915.2 of the Crimes Code,] 18 Pa. C.S. §4915.2 (relating to failure to comply with 42 Pa. C.S. Ch. 97 Subch. I registration requirements)." 42 Pa. C.S. §§9799.56(d), 9799.60(e).

In his petition for declaratory and injunctive relief, M.G. asserts that subchapter I of SORNA II subjects him to an *ex post facto* law. In support, M.G. avers that on November 4, 1992, he pled guilty to one count of robbery and *nolo contendere* to one count of involuntary deviate sexual intercourse. Petition at 2-3, ¶7. He was sentenced to an aggregate term of 13 to 26 years of incarceration. *Id.* at 3, ¶8. At the time of his conviction and sentencing, Pennsylvania did not have a law requiring convicted sex offenders to register with the State Police. *Id.*, ¶9.

M.G. further avers that he was paroled in March 2012. *Id.* at 4, ¶11. As a condition of parole, M.G. was required to register with the State Police as a sex

---

(2) *required to register* with the Pennsylvania State Police *under a former sexual offender registration law* of this Commonwealth on or after April 22, 1996, but before December 20, 2012, whose period of registration has not expired.

42 Pa. C.S. §9799.52 (emphasis added).

offender, which he did on March 13, 2012. *Id.*, ¶11, 12. At that time, Megan's Law III was in effect, and it imposed a lifetime registration requirement upon M.G.[5] *Id.*, ¶11. While on parole, M.G. was arrested for violating his parole conditions and recommitted to a state correctional institution as a technical parole violator. *Id.*, ¶12. M.G.'s maximum sentence date is October 23, 2020. *Id.*

Subchapter I of SORNA II will require M.G. to register for his lifetime. 42 Pa. C.S. §9799.55(b)(2). He must provide his current residence and place of

---

[5] The law provided:

(b) Lifetime registration.—The following individuals shall be subject to lifetime registration:

(1) An individual with two or more convictions of any of the offenses set forth in [42 Pa. C.S. §9795.1(a)].

(2) Individuals convicted:

(i) in this Commonwealth of the following offenses:

18 Pa. C.S. §3121 (relating to rape).

*18 Pa. C.S. §3123 (relating to involuntary deviate sexual intercourse).*

18 Pa. C.S. §3124.1 (relating to sexual assault).

18 Pa. C.S. §3125 (relating to aggravated indecent assault).

18 Pa. C.S. §4302 (relating to incest) when the victim is under 12 years of age.

(ii) of offenses similar to the crimes cited in subparagraph (i) under the laws of the United States or one of its territories or possessions, another state, the District of Columbia, the Commonwealth of Puerto Rico or a foreign nation or under a former law of this Commonwealth who currently reside in this Commonwealth.

(3) Sexually violent predators.

(4) An individual who is considered to be a sexually violent predator under section 9795.2(b) or who is otherwise required to register for life under section 9795.2(b).

Act of May 10, 2000, P.L. 74, *as amended*, *formerly* 42 Pa. C.S. §9795.1(b) (emphasis added).

5

employment, including any changes thereto, to the State Police. 42 Pa. C.S. §9799.56(a)(1)-(2). This information, together with a current photograph, will appear online. M.G. must appear annually before the State Police to verify his residence and to be photographed. 42 Pa. C.S. §9799.60(b).

M.G. asserts that the registration requirements in subchapter I of SORNA II violate the *ex post facto* clauses of the United States and Pennsylvania Constitutions.[6] M.G. also asserts that subchapter I does not apply to him. He registered under Megan's Law III, but that law was rendered null and void by the Pennsylvania Supreme Court in *Neiman*, 84 A.3d 603. Based on the foregoing, M.G. seeks an order declaring that subchapter I of SORNA II does not apply to him and that he does not have to register with the State Police. The State Police filed an answer and new matter, admitting, in relevant part, that "Megan's [L]aw was not yet in existence when M.G. was convicted." State Police Answer, ¶¶7-8, 126.

Subsequently, M.G. filed the instant application for summary relief.[7] Therein, M.G. asserts that he is entitled to relief because the lifetime registration requirement set forth in subchapter I of SORNA II violates the prohibition against

---

[6] M.G. also argues that SORNA II, as applied to him, violates the separation of powers doctrine, places him in double jeopardy, and is fundamentally unfair.

[7] "An application for summary relief may be granted if a party's right to judgment is clear and no material issues of fact are in dispute." *Hospital & Healthsystem Association of Pennsylvania v. Commonwealth*, 77 A.3d 587, 602 (Pa. 2013) (quoting *Jubelirer v. Rendell*, 953 A.2d 514, 521 (Pa. 2008)). *See also* PA. R.A.P. 1532(b) (the court may enter judgment on an application for summary relief if the right of the applicant is clear). When ruling on an application for summary relief, this Court "views the evidence in the light most favorable to the non-moving party, and enters judgment only if there is no genuine issue as to any material fact and the right to relief is clear as a matter of law." *Hospital & Healthsystem Association of Pennsylvania*, 77 A.3d at 602. Because there are no material facts in dispute, we examine whether M.G.'s right to judgment is clear as a matter of law.

*ex post facto* laws.[8]  The State Police responds that M.G. became a lifetime registrant upon enactment of Megan's Law II in July 2000, at a time he was incarcerated.  For this reason, subchapter I of SORNA II requires M.G. to register for life.  The State Police argues that this Court "has repeatedly determined that SORNA I is not an unconstitutional [*ex post facto*] law as applied, to the extent it merely continues the same registration requirement already in place under a prior law."  State Police Opposition to Summary Relief Application, at 15.  Because M.G. was a lifetime registrant in Pennsylvania when SORNA II was enacted, it did not extend his period of registration.  The State Police contends that M.G.'s application must fail.

We conclude that M.G. is entitled to summary relief under this Court's *en banc* decision in *T.S. v. Pennsylvania State Police*, 231 A.3d 103 (Pa. Cmwlth. 2020), *notice of appeal filed* (Pa., No. 34 MAP 2020, filed June 10, 2020).[9]  In *T.S.*, this Court held that subchapter I of SORNA II was punitive and could not be applied to the petitioner, because he committed his sexual offenses before Pennsylvania had enacted a sex offender registration scheme.  *T.S.* is binding.

The petitioner in *T.S.* committed his sexual offense in 1990, before the 1995 enactment of Megan's Law.  Upon his release from incarceration in 2002, T.S. was subject to a lifetime registration requirement in Megan's Law II.  Subchapter I of SORNA II continued that registration requirement.  Before this Court, T.S. argued

---

[8] On March 10, 2020, M.G. filed a letter application for relief requesting expedited review of this matter because of his upcoming release from incarceration in October 2020.  The State Police did not file a response.  Subsequently, on July 10, 2020, M.G. filed a letter motion requesting expedited review of this matter.

[9] On June 10, 2020, M.G. filed a letter application for leave to file a post-submission communication stating that this Court's decision in *T.S.* is dispositive of the issues he raised in his petition for declaratory and injunctive relief and application for summary relief.

7

subchapter I of SORNA II violated the prohibition against *ex post facto* laws, given the Supreme Court's holding in *Muniz*, 164 A.3d 1189. We agreed.

To determine whether the registration provisions violated the *ex post facto* clauses of the United States and Pennsylvania Constitutions, this Court applied the analysis set forth by the United States Supreme Court in *Kennedy v. Mendoza-Martinez*, 372 U.S. 144 (1963). The *Mendoza-Martinez* analysis requires a reviewing court to consider whether the legislature's "intent is 'to impose punishment,'" and, if not, "whether the statute 'is so punitive either in purpose or effect as to negate'" the legislature's non-punitive intent. *T.S.*, 231 A.3d at 119 (quoting *Smith v. Doe*, 538 U.S. 84, 92 (2003)).

With regard to the first part of the *Mendoza-Martinez* test, this Court concluded that the "General Assembly had a nonpunitive intent in enacting subchapter I of [SORNA II]." *T.S.*, 231 A.3d at 120. We found support in the language of the law itself, which stated that the purpose of the registration and notification provisions "shall not be construed as punitive." *Id.* (quoting 42 Pa. C.S. §9799.51(b)(2)). Additionally, we observed that subchapter I sought to "[p]rotect the safety and general welfare of the people of this Commonwealth," to "[r]equire the exchange of relevant information … as a means of assuring public protection" and to address the Supreme Court's decision in *Muniz*, which held that registration requirements could not be increased retroactively. *Id.* (citing 42 Pa. C.S. §9799.51(b)(1), (2), (4)).

Turning to the second prong of the *Mendoza-Martinez* test, this Court considered whether subchapter I of SORNA II was so punitive either in intent or effect that it negated the General Assembly's stated non-punitive intent. To that end, we considered the following seven factors:

8

> [1] whether the sanction involves an affirmative disability or restraint, [2] whether it has historically been regarded as punishment, [3] whether it comes into play only on a finding of scienter, [4] whether its operation will promote the traditional aims of punishment – retribution and deterrence, [5] whether the behavior to which it applies is already a crime, [6] whether an alternative purpose to which it may rationally be connected is assignable for it, and [7] whether it appears excessive in relation to the alternative purpose assigned.

*T.S.*, 231 A.3d at 119 (quoting *Mendoza-Martinez*, 372 U.S. at 168-69).

This Court concluded that the majority of the factors weighed in favor of finding subchapter I of SORNA II to be punitive as to T.S. because he committed his crimes before any sex offender registration law had been enacted. Specifically, the Court determined that the registration and reporting provisions of subchapter I constituted an affirmative restraint, were sanctions historically regarded as punishments, promoted the traditional punitive aims of retribution and deterrence and were excessive in relation to the stated purpose of subchapter I of SORNA II. Further, at the time he committed the crime T.S. had no notice of the registration requirements of subchapter I. These included the annual in-person appearances at approved registration sites,[10] updates with the State Police of any changes in registration information,[11] and publication online of a registrant's personal information.[12] Thus, we held as follows:

> While some form of retroactive registration requirements may be constitutional, *see Smith*, 538 U.S. at 105, applying the analysis in *Muniz*, we must find the cumulative effect of the registration requirements of subchapter I of [SORNA II] on [the p]etitioner goes beyond imposing mere registration and is punishment. [The

---

[10] 42 Pa. C.S. §9799.60(b).

[11] 42 Pa. C.S. §9799.56(a)(2).

[12] 42 Pa. C.S. §9799.63(c)(1).

9

p]etitioner, who committed the crimes giving rise to his present obligation to register in 1990, could not "have fair warning" of the applicable law that now mandates his registration and the terms thereof…. His right to relief on these *ex post facto* claims is not premised in a "right to less punishment, but the lack of fair notice and governmental restraint" that occurred when the General Assembly "increase[d] punishment beyond what was prescribed when the crime was consummated." …. Accordingly, we determine that the *Mendoza-Martinez* factors weigh in favor of finding subchapter I of [SORNA II] to be punitive as applied to [the p]etitioner under the *Ex Post Facto* clause of the United States Constitution.[]

*T.S.*, 231 A.3d at 136-37 (quotations omitted) (footnotes omitted).

Likewise, in *B.W. v. Pennsylvania State Police* (Pa. Cmwlth., No. 433 M.D. 2018, filed July 6, 2020) (unreported),[13] the petitioner challenged the constitutionality of subchapter I of SORNA II, as applied to him. The petitioner was convicted in 1995 of rape, aggravated indecent assault, and indecent assault. He was sentenced to 3½ to 10 years' imprisonment. He was paroled from his sentence in June 2001, and became a lifetime registrant under Megan's Law II. Because the petitioner committed his crimes prior to the enactment of a sexual offender registration scheme, he had no fair notice or warning of the extensive requirements that would govern his registration. Although the petitioner was convicted of his crimes in December 1995, after Megan's Law I was enacted, we concluded that "the date of the offense is central to an *ex post facto* analysis." *B.W.*, slip op. at 14 (quoting *T.S.*, 231 A.3d at 119). Because the petitioner's conduct occurred prior to

---

[13] An unreported panel decision of this Court, "issued after January 15, 2008," may be cited "for its persuasive value[.]" Section 414(a) of the Commonwealth Court's Internal Operating Procedures, 210 Pa. Code §69.414(a). The State Police filed an appeal in *B.W.* on July 29, 2020, which is docketed at 44 MAP 2020. *B.W.*'s cross-appeal, filed on August 13, 2020, is docketed at 47 MAP 2020.

1995, we held that subchapter I of SORNA II was an unconstitutional *ex post facto* law as applied to him.  *B.W.*, slip op. at 14.

Recently, the Supreme Court issued a decision in the consolidated appeals of *Commonwealth v. Lacombe*, ___ A.3d ___ (Pa., No. 35 MAP 2018, filed July 21, 2020), and *Commonwealth v. Witmayer*, ___ A.3d ___ (Pa., No. 64 MAP 2018, filed July 21, 2020) (collectively, *Lacombe*).  It held that subchapter I of SORNA II did not violate the constitutional prohibition against *ex post facto* laws.  Notably, the appellees in *Lacombe* committed their offenses after Pennsylvania had enacted a sexual offender registration statute.  Indeed, the Supreme Court stated that its *ex post facto* analysis of subchapter I applied "to those *convicted* of a sexually violent offense *after* April 22, 1996, but before December 20, 2012."  *Lacombe*, __ A.3d at __, slip op. at 17 (emphasis added).  The holding in *Lacombe* is limited to its facts. It does not undertake an *ex post facto* analysis of subchapter I as applied to individuals, such as T.S., who committed their offense *before* Pennsylvania's first sexual offender registration scheme became effective on April 22, 1996.

The analysis and reasoning in *T.S.* and *B.W.* are dispositive here.  As in those cases, M.G. committed his crimes before Pennsylvania had any sex offender registration requirements.[14]  The lifetime registration requirement imposed on M.G. under subchapter I of SORNA II derives solely from his 1992 conviction.  At the time he committed this crime, M.G. did not "'have fair warning' of the applicable law that now mandates his registration and the terms thereof."  *T.S.*, 231 A.3d at 118 (quoting *Peugh v. United States*, 569 U.S. 530, 544 (2013)).  As in *T.S.* and *B.W.*, the application of SORNA II's lifetime registration and reporting requirements

---

[14] Although M.G. did not aver the date he committed his crimes, both parties agree that M.G. was convicted and sentenced in 1992.  Therefore, the conduct which gave rise to M.G.'s conviction must have occurred in or before 1992.

11

inflicts greater punishment on M.G. than the law in effect at the time that he committed his crimes. Thus, subchapter I of SORNA II is an unconstitutional *ex post facto* law as applied to M.G.[15]

Accordingly, we grant M.G.'s application for summary relief and declare that M.G. is not subject to subchapter I of SORNA II's registration and reporting requirements.[16]

_____
MARY HANNAH LEAVITT, President Judge

---

[15] Accordingly, we need not address M.G.'s other claim, *i.e.*, that by its terms subchapter I does not apply to him, because he had previously registered as a sex offender under Megan's Law III, which was declared void and unconstitutional.

[16] M.G.'s requests to expedite consideration of his petition and leave to file post-submission correspondence are dismissed as moot. Additionally, M.G.'s application for special relief in the nature of an *ex parte* preliminary injunction, filed September 16, 2020, is dismissed as moot.

IN THE COMMONWEALTH COURT OF PENNSYLVANIA

M.G.,                     :
           Petitioner       :
                         :
       v.                    :    No. 201 M.D. 2019
                         :
Pennsylvania State Police,       :
           Respondent    :

# **O R D E R**

AND NOW, this 25th day of September, 2020, M.G.'s Application for Summary Relief is GRANTED. Judgment is entered in favor of M.G., declaring the application of subchapter I of the Act of February 21, 2018, P.L. 27, 42 Pa. C.S. §§9799.10-9799.75, *as amended* by the Act of June 12, 2018, P.L. 140 (collectively, SORNA II), to M.G. is a violation of the *ex post facto* clauses of the United States and Pennsylvania Constitutions. The Pennsylvania State Police is, therefore, ORDERED not to apply subchapter I of SORNA II to M.G.

M.G.'s letter applications for expedited review and leave to file a post-submission communication are DISMISSED as moot. Additionally, M.G.'s application for special relief in the nature of an *ex parte* preliminary injunction is DISMISSED as moot.

_____
MARY HANNAH LEAVITT, President Judge

M.G.,                                    :
                  Petitioner           :
                              :
                  v.                       :
                              :
Pennsylvania State Police,               :        No. 201 M.D. 2019
                Respondent           :        Submitted: November 22, 2019


BEFORE:    HONORABLE MARY HANNAH LEAVITT, President Judge
                  HONORABLE ANNE E. COVEY, Judge
                  HONORABLE CHRISTINE FIZZANO CANNON, Judge


OPINION NOT REPORTED

DISSENTING OPINION
BY JUDGE COVEY                           FILED:  September 25, 2020


         Because the Pennsylvania Supreme Court in *Commonwealth v. Lacombe*, ___ A.3d ___ (Pa. No. 35 MAP 2018, filed July 21, 2020), ruled that Subchapter I of the Sexual Offender Registration and Notification Act (SORNA II)[1] does not violate the constitutional prohibition against *ex post facto* laws, and M.G. was required to register as a sexual offender under Megan's Law III[2] as a condition of his parole in March 2012, Subchapter I of SORNA II[3] applies to M.G.  Accordingly, I would deny M.G.'s application for summary relief.

         Initially, the Majority attempts to distinguish the instant case from *Lacombe* by stating: "[T]he Supreme Court stated that its *ex post facto* analysis of subchapter I applied 'to those *convicted* of a sexually violent offense *after* April 22,

---

[1] 42 Pa.C.S. §§ 9799.10-9799.75.

[2] 42 Pa.C.S. §§ 9791-9799.75.  SORNA I, 42 Pa.C.S. §§ 9799.10-9799.41, replaced Megan's Law III.  SORNA I was amended by Act of February 21, 2018, P.L. 27 (Act 10), and Act of June 12, 2018, P.L. 140 (Act 29).  SORNA II is the amended version of SORNA I.

[3] 42 Pa.C.S. §§ 9799.51-9799.75.

1996, but before December 20, 2012.' *Lacombe*, slip op. at 17 (emphasis added)."

*M.G. v. Pa. State Police* (Pa. Cmwlth. No. 201 M.D. 2019, filed September 25, 2020),

slip op. at 11.  However, the *Lacombe* Court stated:

> **The provisions of Subchapter I most relevant to our present analysis follow**:
>
> • Subchapter I applies to those convicted of a sexually violent offense after April 22, 1996, but before December 20, 2012. 42 Pa.C.S. § 9799.52(1), (2).
>
> • Those convicted of one of the triggering offenses must register either for a period of ten years or for life.  42 Pa.C.S. § 9799.55(a), (b).  Those offenders designated as [sexually violent predators (SVP)] must register for life.  *Id.* § 9799.55(b)(3).
>
> • Persons convicted of the following crimes are subjected to a ten[-]year registration period: kidnapping, indecent assault, incest, prostitution, obscene and sexual materials, sexual abuse of children, unlawful contact with a minor, sexual exploitation of children, luring a child into a motor vehicle, and institutional sexual assault.  42 Pa.C.S. § 9799.55(a).
>
> • Persons convicted of the following crimes, SVPs, and offenders convicted of two or more of the ten-year reporting crimes are subject to lifetime registration: rape, [involuntary deviate sexual intercourse], sexual assault, aggravated indecent assault, and incest with a child under the age of twelve.  42 Pa.C.S. § 9799.55(b).
>
> • A number of crimes, which were included in SORNA [I], and are not necessarily sexually related, were removed from the list of triggering offenses in Subchapter I, including, but not limited to, the following: unlawful restraint, false imprisonment, interference with custody of children, and invasion of privacy.
>
> • A non-SVP must report in person once per year at an approved facility to verify their [sic] residence and be photographed.  42 Pa.C.S. §§ 9799.60(b), 9799.54(b).  An SVP must report in person four times per year.  *Id.* § 9799.60(a).

• All offenders must contact the [Pennsylvania State Police (]PSP[)] within three days of any change to their registration information, including changes to residence, employment, or education. However, Subchapter I does not require that the offender must appear in person to satisfy this obligation. 42 Pa.C.S. § 9799.56(a)(2).

• Generally, failure to comply with the registration requirements results in a felony prosecution. 42 Pa.C.S. § 9799.60(e); 18 Pa.C.S. § 4915.2(b), (c).

• The subchapter also establishes a website to be operated in conjunction with the statewide registry. The website will publish the following information as to each offender: (1) name and known aliases; (2) year of birth; (3) the address, municipality, county, and zip code of any residence at which the offender lives; (4) the location of any schools attended by the offender; (5) the address of any employment location; (6) a photograph of the offender that must be updated at least once per year; (7) a physical description of the offender, including sex, height, weight, eye color, hair color, and race; (8) any identifying marks, including tattoos, scars, or birthmarks; (9) the license plate number and a description for any vehicle owned or registered to the offender; (10) a status report regarding whether the offender is compliant with the terms of SORNA [II]; (11) an indication of whether the offender's victim was a minor; (12) a description of the offense committed by the offender; (13) the dates of the offense and conviction; and (14) the location of the offender's temporary shelter and where the offender receives mail, if the offender is homeless. 42 Pa.C.S. § 9799.63(c).

• If a member of the public so desires, the website will alert that person by electronic notification if an offender moves in or out of the geographic area designated by the person. 42 Pa.C.S. § 9799.63(b)(7).

• Finally, an SVP or lifetime reporter can petition a court to be removed from the statewide registry. At the time of the petition, the SVP must not have been convicted of any crime punishable by one year or longer after being released from prison or after registering for the first time, whichever is later, for a period of twenty-five years. Also, the offender must be reviewed by a member of the Sexual Offender Assessment Board. The SVP or lifetime reporter must

demonstrate by clear and convincing evidence that he or she no longer poses a risk, or a threat of risk, to the public or any individual person. 42 Pa.C.S. § 9799.59(a).

*Lacombe*, slip op. at 17-19 (emphasis added). Therefore, *Lacombe* did not limit its holding to those offenders convicted of a sexually violent offense after April 22, 1996, but before December 20, 2012.

> Significantly, Subchapter I of SORNA II applies to individuals who were:
>
> (1) convicted of a sexually violent offense committed on or after April 22, 1996, but before December 20, 2012, whose period of registration with the [PSP] as described in [S]ection 9799.55 [of SORNA II] (relating to registration), has not expired; **or**
>
> (2) **required to register with the [PSP] under a former sexual offender registration law of this Commonwealth on or after April 22, 1996, but before December 20, 2012, whose period of registration has not expired**.

42 Pa.C.S. § 9799.52 (emphasis added). As stated by the Majority,

> M.G. further avers that he was paroled in March 2012. [M.G.'s petition for declaratory and injunctive relief] at 4, ¶11. As a condition of parole, M.G. was required to register with the [PSP] as a sex offender, which he did on March 13, 2012. *Id.*, ¶[¶]11, 12. At that time, Megan's Law III was in effect, and it required M.G. to register for his lifetime.

*M.G.*, slip op. at 4-5.

In 2017, the Pennsylvania Supreme Court, in *Commonwealth v. Muniz*, 164 A.3d 1189 (Pa. 2017), using the analysis the United States Supreme Court set forth in *Kennedy v. Mendoza-Martinez*, 372 U.S. 144 (1963), declared SORNA I unconstitutional. Thereafter, the General Assembly enacted SORNA II. This Court, in *T.S. v. Pennsylvania State Police*, ___ A.3d ___ (Pa. Cmwlth. No. 129 M.D. 2019, filed **May 11**, **2020**), using the *Mendoza-Martinez* analysis, held that Subchapter I of SORNA II was unconstitutional **as applied to T.S**. as an *ex post facto* law because T.S. committed his offense before any registration statutes were enacted. Thereafter, on

July 21, 2020, using the same *Mendoza-Martinez* analysis, the Pennsylvania Supreme Court in *Lacombe* held:

> Subchapter I [of SORNA II] effected significant changes from [SORNA I], retroactive application of which we found unconstitutional in *Muniz*. To summarize, we find three of the five factors weigh in favor of finding Subchapter I [of SORNA II] nonpunitive. Additionally, we give little weight to the fact Subchapter I [of SORNA II] promotes the traditional aims of punishment and give **significant weight to the fact Subchapter I [of SORNA II] is narrowly tailored to its nonpunitive purpose of protecting the public**. As we have not found the requisite 'clearest proof' Subchapter I [of SORNA II] is punitive, **we may not 'override legislative intent and transform what has been denominated a civil remedy into a criminal penalty**[.]' *Hudson v.* [*U.S.*], 522 U.S. 93, 100 (1997), *quoting* [*U.S.*] *v. Ward*, 448 U.S. 242, 249 (1980) (internal quotations omitted).

*Lacombe*, slip op. at 35 (emphasis added). Moreover, the *Lacombe* Court did not limit its holding to **as applied to Lacombe**, but rather, at the beginning and end of its decision, stated: "Subchapter I [of SORNA II] is nonpunitive and does not violate the constitutional prohibition against *ex post facto* laws[,]" *Lacombe*, slip op. at 2, and "[w]e hold Subchapter I [of SORNA II] does not constitute criminal punishment, and the *ex post facto* claims forwarded by appellees necessarily fail." *Id.*, slip op. at 35.

The *T.S.* Court and the *Lacombe* Court discuss each of the seven factors contained in the *Mendoza-Martinez* analysis.[4] Both Courts found factor two weighed

---

[4] Those seven factors include:

> Whether the sanction involves an affirmative disability or restraint, whether it has historically been regarded as a punishment, whether it comes into play only on a finding of scienter, whether its operation will promote the traditional aims of punishment-retribution and deterrence, whether the behavior to which it applies is already a crime, whether an alternative purpose to which it may rationally be connected is assignable for it, and whether it appears excessive in relation to the alternative purpose assigned . . . .

in favor of finding Subchapter I of SORNA II punitive, factor six weighed in favor of finding Subchapter I of SORNA II nonpunitive, and factors three, four and five carried little weight. However, the *T.S.* Court determined that factor seven weighed in favor of finding Subchapter I of SORNA II punitive, in contrast to the *Lacombe* Court, which concluded that factor seven weighed heavily in favor of finding Subchapter I of SORNA II nonpunitive. The Majority does not discuss each factor, but rather relies on the factors as discussed in *T.S.*

Importantly, in weighing factors six and seven, which the *Lacombe* Court described as two of the most significant factors, the *T.S.* Court determined that, with respect to factor six, "[b]ecause [SORNA II] clearly has a purpose beyond punishment, this factor weighs in favor of finding [S]ubchapter I of [SORNA II] to be nonpunitive as applied to [T.S.]." *T.S.*, slip op. at 49. However, with respect to factor seven, the *T.S.* Court began its discussion: "Our analysis requires that we examine the application of the entire statutory scheme of [S]ubchapter I of [SORNA II] to [T.S.] in relation to the obligations that existed at the time he committed his offenses." *T.S.*, slip op. at 53. The *T.S.* Court's analysis of factor seven is much broader than the *Lacombe* Court's analysis. The *T.S.* Court compared the pre-registration requirements with the SORNA II requirements, as opposed to determining, as the *Lacombe* Court stated, whether the SORNA II requirements are necessary, rather than excessive, in relation to the statute's alternative assigned purpose of protecting the public from sex offenders.

Based thereon, the *T.S.* Court concluded:

> [T.S.] committed his crimes in 1990 and, therefore, he had no notice that he would be subject to any registration requirements, let alone a variety of increasing registration requirements, for his lifetime, including dissemination of his personal information on the Internet. Accordingly, consistent with *Muniz* . . . , we must conclude that

---

*Mendoza-Martinez*, 372 U.S. at 168-69 (footnotes omitted).

> [S]ubchapter I of [SORNA II] is excessive in relation to its purpose, such that this factor weighs in favor of finding it punitive as applied to [T.S.]

*T.S.*, slip op. at 54-55. However, the *T.S.* Court applied this same reasoning in its analysis of factor one (thus, the arguable distinction of the *T.S.* Court finding factor one weighed in favor of finding SORNA II punitive, and the *Lacombe* Court concluding it weighed in favor of finding SORNA II nonpunitive,) and, under the *Lacombe* Court's analysis, does not apply to factor seven. Although *T.S.* was decided before *Lacombe*, this Court is now bound to follow *Lacombe*.

With respect to factor seven, the *Lacombe* Court held: "[W]e find the Subchapter I [of SORNA II] requirements are necessary, rather than excessive, in relation to the statute's alternative assigned purpose of protecting the public from sex offenders. Accordingly, this factor weighs heavily in favor of finding Subchapter I [of SORNA II] nonpunitive." *Id.*, slip op. at 35. This determination is not limited to **as applied to Lacombe**, nor is any comparison drawn between Lacombe's requirements at the time he committed his offense and SORNA II's requirements. Rather, the analysis is restricted to comparing the statutory purpose with the restrictions, and determining whether the restrictions are necessary to accomplish the purpose.

Applying the *Lacombe* factor seven analysis in *M.G.*, factor seven "weighs heavily in favor of finding Subchapter I [of SORNA II] nonpunitive." *Lacombe*, slip op. at 35. Accordingly, two of the three most significant factors weighing heavily in favor of finding Subchapter I of SORNA II nonpunitive mandate this Court to conclude that Subchapter I of SORNA II does not violate the constitutional prohibition against *ex post facto* laws.

Notably, the *Muniz* Court expressly stated, relative to factor seven: "[**W**]**e do not analyze excessiveness as applied only to appellant or sexually violent predators, but instead we examine SORNA [I]'s entire statutory scheme**." *Id*. at 1218 (emphasis added). Indeed, the *T.S.* Court acknowledged this statement by

explaining: "Although [T.S.] asserts an as applied challenge to [S]ubchapter I of [SORNA II], because the Supreme Court in *Muniz* looked to the statutory scheme on the whole to determine excessiveness in relation to the rational purpose[,] we will begin our analysis the same way." *T.S.*, slip op. at 52. The *Muniz* Court found SORNA I punitive under factor seven because, *inter alia*, it was overly inclusive, i.e., included offenders whose offenses were not related to sex. The *Lacombe* Court determined that the General Assembly's amendments to SORNA II alleviated the *Muniz* Court's concerns and ruled Subchapter I of SORNA II's requirements necessary to achieve the statute's purpose.

Based on the foregoing, the Majority's holding appears to conflict with the Pennsylvania Supreme Court's holding in *Lacombe*. Because we are bound by *Lacombe*'s ruling that "Subchapter I [of SORNA II] is nonpunitive and does not violate the constitutional prohibition against *ex post facto* laws[,]" *Lacombe*, slip op. at 2, I would deny M.G.'s application for summary relief.

_____
ANNE E. COVEY, Judge